WHEELER *v.* SEXTON.

*(Circuit Court, D. Nebraska.   March 8, 1888.)*

MORTGAGES—POWER OF SALE—VALIDITY OF SALE UNDER POWER.

Upon the authority of the Nebraska supreme court decisions, a sale of land situated in Nebraska, under a power of sale in a mortgage, is invalid, the mortgagee being confined to an action for the sale of the premises, or to an ordinary suit at law to recover the debt itself.

In Equity.   Action in ejectment by John G. Wheeler against Thomas Sexton.
*Montgomery & Jeffrey*, for plaintiff.
*W. H. Munger*, for defendant.

BREWER, J.   This is an action in ejectment.   The facts are these: In 1874 Haroni Wheeler was the owner of the land.   He resided in Moline, Ill., and, besides the tract in controversy, owned several other pieces

of property in Illinois and Missouri. Certain parties indorsed a note for him, and to secure them he executed a mortgage on these several tracts. The mortgage contained a power of sale, authorizing the mortgagees, on default in payment of the note, to advertise and sell in the city of Rock Island, Ill. He did default, and the mortgagees advertised and sold. The single question is as to the validity of that sale. As the land is situated in this state, it is a question of local law, and in it this court must be guided by the decisions of the supreme court of this state. *Burgess* v. *Seligman,* 107 U. S. 20, 2 Sup. Ct. Rep. 10; *Flash* v. *Conn,* 109 U. S. 371, 3 Sup. Ct. Rep. 263; *Samuel* v. *Holladay,* 1 Woolw. 406. The validity of such a power, and of the sale made under it, at common law may be conceded; and it is also true that in the Nebraska statutes can be found no express prohibition upon such a power; yet it seems to me that the supreme court of Nebraska, by two or three decisions at an interval of many years, has ruled against the validity of a sale made under such a power, and limited the mortgagees' remedies to proceedings in court. The first case referred to is that of *Kyger* v. *Ryley,* 2 Neb. 22, (decided some time prior to 1873.) It is true, in that case the precise question was whether, when a note was barred, the mortgage securing it was also barred; but the opinion discusses at some length the different *status* of a mortgage at common law, and that under the statute, and in the course of the opinion this declaration is found: "The remedy of the mortgagee is confined to an action for the sale of the pledged or mortgaged premises to pay the debt secured by the mortgage, or to an ordinary suit at law to recover the debt itself." Again, in the cases of *Webb* v. *Hoselton,* 4 Neb. 308, and *Hurley* v. *Estes,* 6 Neb. 386, (decided in 1876 and 1877,) the court ruled that a deed of trust to a third person, as trustee for the creditor, is no more than a mortgage, and subject to the same rules as to its nature and the method of foreclosure. And finally, in the case of *Comstock* v. *Michael,* 17 Neb. 298, 22 N. W. Rep. 549, (decided in 1885,) these facts were presented: A deed of trust had been executed containing a power of sale similar to the one at bar. Under that power the trustees sold and conveyed. The proceedings were regular. The purchaser, who was the original creditor, brought this suit, and in it set forth the original trust deed, the proceedings under the sale, and prayed a decree quieting the title. He also set forth the debt which was secured by the trust deed, and prayed in the alternative that, if the proceedings under the sale were not valid, he might have a decree of foreclosure. The trial court, holding the proceedings invalid, found the amount due on the debt, and decreed foreclosure. The debtor took the case to the supreme court, and that court held that a foreclosure was proper, but reversed the judgment on the ground that the debt had been fixed at too large an amount. After holding that a bill stating facts and praying relief in the alternative was good under equity practice, it adds these words:

"There can be no doubt but that a deed of trust can be foreclosed the same as an ordinary mortgage, and although the plaintiff had at one time adopted and sought to pursue an unwarranted and inadmissible remedy, yet it cannot be said that he thereby forfeited his right, while yet *in loco penitentiæ,* to

turn back and enter upon the true course. And as to the effect of whatever he did while in pursuit of the false method, while we must hold that he gained nothing by such proceedings, we must admit that he lost nothing beyond 'his time, labor, and expenses."

Counsel for defendant insists that this expression of opinion is mere *dictum*, and 'that therefore the question is still open for consideration by this court; but I cannot so regard it, even if this case · stood by itself. Certainly, when taken in connection with the earlier cases, it would seem as though the supreme court had decided the question, so far as this state is concerned; for if the proceedings under the power were valid, the plaintiff had a good title, and should have had a decree quieting it. He should not have been put to the delay and expense of a foreclosure sale, with the possibility of finally losing the land. If his title were good, the amount of the original debt was immaterial. That his bill and prayer were good for a decree quieting the title was conceded, and the only question was whether there was enough in it to sustain a foreclosure; and yet upon such a state of facts the supreme court says that he took nothing by his proceedings under the power, and reduced the amount of debt as found by the trial court. So, whatever might be my views upon this question as an independent proposition, I think the supreme court of the state has decided it, and I must follow that decision.

Judgment will be entered for the plaintiff.