## NASH HARDWARE COMPANY v. GUY E. MORRIS.

No. 2403. Decided May 8, 1912.

**1.—Constitution—Bulk Sales Law.**

The Act of March 1, 1909, Laws, 31st Leg., p. 66, regulating sales of stocks of goods in bulk or otherwise than in the ordinary course of trade, is not invalid as being in contravention of the Constitution of the State. (P. 221.)

**2.—Same—Preference of Classes of Creditors.**

The "Bulk Sales Law" gives no preference to wholesale merchants as creditors. All classes of creditors are embraced in its provisions, and all are left to the same remedies. (P. 222.)

### 3.—Same—Classes of Debtors.

The ''Bulk Sales Law'' is not, by its terms, limited, in its application, to retail dealers, though most frequently affecting them in its application to the facts. But if so limited, it would not be invalid for that reason. It applies alike to all kinds of business coming within the same class, and this is sufficient. (P. 223.)

### 4.—Same—Freedom of Contract—Police Power.

The ''Bulk Sales Law'' is not invalid as depriving seller and purchaser of freedom of contract. Such restrictions are permitted as an exercise of the police power of the State, so far as they are not unreasonable. The police power defined. (Pp. 223-226.)

### 5.—Same.

The rights of any class of persons to buy or sell on the same terms as others are protected by art. 1, sec. 19, of the Constitution from interference by the Legislature beyond the reasonable exercise of the police power of the State. (P. 224.)

### 6.—Same.

Transfers of stocks of merchandise in bulk, or out of the ordinary course of business, are recognized by the law as bearing badges of fraud, of which fact the buyer takes notice. It is not an unreasonable limitation on the right of contract that the statute (Act of March 1, 1909) requires the giving of notice to the creditors of the seller, as a condition to the validity of such transfers. It eliminates the issue of fraud frequently raised in case of such sales, protects the public and the honest buyer, and inconveniences only the dishonest. (P. 225.)

Questions certified from the Court of Civil Appeals, Second District, in an appeal from Tarrant County.

In case No. 2384, a previous certificate of 'this cause was returned to the Court of Civil Appeals with the following suggestion from the Supreme Court by the Chief Justice: ''Respectfully returned to the Honorable Court of Civil Appeals of the Second District with the suggestion that it make a statement and propound questions upon facts to be determined from the record. This court will not act upon an entire record referred to it.''

*George Q. McGown, F. B. Stanley, T. A. Altman,* and *D. M. Alexander,* for appellants.—The effect and purpose of general Act, Chapter 27, page 66, Thirty-first Legislature of Texas, 1909, regulating the sale and transfer of possession of stocks of merchandise in bulk is and was to make the attempted disposition or transfer of possession by the debtor fraudulent and void as to creditors, and the taker or possessor thereof a trustee accountable to the creditors of the debtor for the possession or value of the property, unless the requirements of said law as to notice to creditors have been observed; and the appellee, garnishee in this case, being such taker and in possession of the property under such transfer from the debtor without having complied with any of the requirements of said law, but in violation thereof, said property is and was, in contemplation of law, the property of the debtor, subject to the garnishment served on appellee. LeGierse & Co. v. Whitehurst, 66 Texas, 245; Insurance Co. v. Chowning, 86 Texas, 654-660; G. C. & S. F. Ry. v. Ellis,

87 Texas, 22; Queen Ins. Co. v. State of Texas, 86 Texas, 250; Budd v. New York, 143 U. S., 517; Cooley Const.-Lim. (6th ed.), 479.

All rights of all persons to acquire, own, hold, use and dispose of property in this State, real or personal, and to contract in respect thereto, or to engage in any business occupation, or to enforce any contract or right, are derived from and subject to the control and regulation of the State by statutory laws, applicable to the whole or to a particular class, and the Bulk Sales Law of Texas is a valid exercise of the legislative powers of the State upon a general class of subjects and persons within its dominion. Acts Thirty-first Legislature, Chap. 27, p. 66; Jacques v. Warehouse Co., 62 S. E., 82; McDaniels v. Connelly, 71 Pac., 37; Walp v. Mooar, 76 Conn., 515; Neas v. Borches, 109 Tenn., 398; Squire v. Tellier, 185 Mass., 18; Wilson v. Edwards, 32 Pa. St., 295; Spurr v. Travis, 108 N. W., 1090; Thorpe v. Pennock, 108 N. W., 940; Mussulman v. Kidd, 115 N. W., 409; Williams v. Bank, 15 Okla., 477; Hart v. Runey, 93 Md., 432; Lemieux v. Young, 211 U. S., 489; Kidd v. Mussulman, 217 U. S., 461.

The State of Texas has the right, by appropriate legislation and general laws, to reasonably regulate the conduct, rights, and duties of persons engaged in the several and various classes of occupations, including that of merchants, in Texas, whether such general laws and regulations are appropriate and apply universally to all persons and all classes of occupations and business dealings, or only to all of a designated class, unless prohibited by the Constitution of the State of Texas or the Constitution of the United States, or in violation of some right secured, guaranteed or created thereby. Same authorities. Also: Ins. Co. v. Chowning; 86 Texas, 654-660; G., C. & S. F. Ry. v. Ellis, 87 Texas, 22.

In contemplation of law and equity a debtor sustains two distinct relations to his property, (1) that of owner with right of dominion and disposition; and (2) that of quasi trustee for his creditors who have trusted him upon the general credit of his property, in confidence that he will not dispose of, or diminish it to their prejudice, and who therefore have a right to be paid therefrom and an equitable claim upon and interest in it which he must respect; and the Bulk Sales Law of Texas, Acts of 1909, page 66, is in perfect accord and harmony with the general views and body of the law, and of the said relation of trust and confidence. Candee v. Lord, 2 N. Y., 269, 51 Am. Dec., 294; Bump. Fraud. Conveyances, sec. 16 (4th ed); Hamilton v. Russell, 1 Cranch, 309; Clements v. Moore, 6 Wall, 299; Gardner v. Cole, 21 Iowa, 205-210; Bump. Fraud. Conveyances, secs. 9, 10, 11, 12, 13 and 14.

*Dowthit & Smith, Lee & Lomax,* and *W. D. Smith,* for appellee.— The effect of the general Act, known as the "Bulk Sales Law," Chapter 27, page 66, Thirty-first Legislature of Texas, 1909, restricting the right of merchants or owners of stocks of merchandise to dispose of their own property, is to prefer wholesale merchants as creditors, and give them advantages and privileges which are denied to all other persons. By the terms of the statute, a cumbersome and

unreasonable burden is placed on a limited class of debtors, and an exclusive separate privilege given to a limited class who are their creditors. The act is therefore class legislation. S. A. & A. P. Ry. Co. v. Wilson, 19 S. W., 910; Sutherland v. DeLeon, 1 Texas, 250, 302; Craven v. Coleman, 96 S. W., 774; Miller v. Crawford, 71 N. E., 631; Wright v. Hart, 75 N. E., 404.

This statute is unconstitutional because it deprives the retail merchants of this State of the full and free right of contract, and does not deprive any other persons or class of persons of such right. It is in restraint of liberty and property, and makes no discrimination between sales honestly made, and those made to defraud; both are equally *void,* unless the terms of the statute are complied with. McKinster v. Sager, 72 N. E., 854; Miller v. Crawford, 71 N. E., 631; Block v. Schwartz, 76 Pac., 22; Wright v. Hart, 75 N. E., 404; Off & Co. v. Morehead, 85 N. E., 264.

This statute cannot be upheld on the ground that it is a valid exercise of the police power of the State. The Legislature has power to enact reasonable laws for the prevention of fraud, and the protection of creditors, when public necessity demands the same, but the Bulk Sales Law is an unreasonable and unnecessary burden placed on a highly respected and important class of citizens of the State. Ascanaba Company v. Chicago, 107 U. S., 678; Cooley's Constitutional Limitations (6th ed.), 705; also cases cited above.

The effect of this statute is to deprive the small class of persons to which it applies of their property and the right to contract concerning the same with the "due course of the law of the land." The Texas Statute makes the sale absolutely void unless the terms of the statute are complied with; and we submit that there is a vast difference between a statute which makes a sale absolutely void, and one which merely makes a statutory presumption of fraud that may be overcome by evidence of good faith. Williams v. Bank, 2 L. R. A., 334; Hart v. Roney, 49 Atl., 661; Fisher v. Herman, 95 N. W., 392; Thorps v. Penocks, 108 N. W., 940; Wulson v. Edwards, 32 Pa. St., 295.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

Certified Question from the Court of Civil Appeals of the Second District. The statement and question are as follows:

"The above cause is now pending before us on appeal from the County Court of Tarrant County for Civil Cases. On March 7th, 1911, Nash Hardware Company secured a judgment in the sum of three hundred and ninety-five dollars and eighty-four cents against W. A. Williams & Company, a co-partnership composed of W. A. Williams and F. S. Williams. Thereafter, on April 5th, 1911, Nash Hardware Company sued out a writ of garnishment based upon such judgment and had the same served on Guy E. Morris as garnishee. To this writ Morris answered that he was not indebted, and had no effects in his hands belonging to said W. A. Williams & Company, or the individual members thereof. The Nash Hardware Company filed a controverting affidavit in which it was alleged that prior to the service of said writ of garnishment and subsequent to the ren-

dition of the original judgment in its favor against Williams & Company, the garnishee Morris had purchased the entire stock of goods, wares and merchandise of the firm of W. A. Williams & Company in bulk and that neither seller nor purchaser complied with the provisions of the Act of the Thirty-first Legislature (General Laws, 1909, p. 66), commonly known as the 'Bulk Sales Law.' The controverting affidavit specifically alleged that at the time of said purchase and sale the said W. A. Williams & Company and the individual partners and the garnishee, Guy E. Morris, each and all wholly failed to give the ten days' notice of such contemplated purchase and sale and wholly failed to notify, or cause to be notified, personally, or by registered mail, any of the creditors of the said W. A. Williams & Company, and particularly the plaintiff, Nash Hardware Company; that said Guy E. Morris failed to make full and explicit inquiry of the said W. A. Williams & Company, or the members thereof, as to the name and place of residence, or place of business, of each and all of the creditors of said Williams & Company and the amount owing to each by such seller, and in numerous other respects declared that said Guy E. Morris and the said Williams & Company in the matter of making such transfer and sale in bulk failed to comply with the requirements of said Act, all of which more fully appears from the controverting affidavit of appellant found in the transcript. This controverting affidavit further shows that at the date of the issuance and service of the writ of garnishment its judgment claimed against W. A. Williams & S. F. Williams composing the firm of Williams & Company, was a valid, subsisting and unsatisfied demand. In replication to the controverting affidavit above referred to the garnishee, Guy E. Morris, filed a general and certain special exceptions, raising the question of the validity of said act, which said exceptions were by the trial court sustained, and, the Nash Hardware Company, declining to amend, judgment was rendered against it for costs and attorney's fees, from which judgment it has appealed, all of which more fully appears from the transcript of the record of the cause, to which reference is made and which will accompany this certificate.

"In view of the importance of the question and in view of the contrariety of holdings upon the constitutionality of similar Statutes in other States, we certify to Your Honors the question whether or not the trial court erred in sustaining the demurrers to the controverting affidavit of appellant, alleging a purchase and sale in violation of the Act referred to."

The statute referred to in the question is not unconstitutional. We copy that part involved:

"Section 1. That any sale or transfer of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the usual and regular prosecution of the seller's or transferer's business; or a sale or transfer of an entire stock of merchandise in bulk, shall be void as against creditors of the seller or transferrer unless the purchaser or transferree shall at least ten days before the sale or transfer, in good faith make full and explicit inquiry of the seller or transferrer as to the name and place of residence or place

of business of each and all creditors of the seller or transferrer, and the amount owing to each such creditor by the seller or transferrer, and obtain from the seller or transferrer a written answer to such inquiries, which answers shall be sworn to by the seller or transferrer; and unless the purchaser or transferree at least ten days before the sale or transfer in good faith, notify or cause to be notified personally or by registered mail each of the seller's or transferrer's creditors of whom the purchaser or transferee has knowledge, of said proposed sale or transfer."

"Sec. 2. Any purchaser or transferree who shall conform to the provisions of this act shall not in any way be held accountable to any creditor of the seller or transferrer for any of the goods, wares or merchandise that have come into the possession of said purchaser or transferree by virtue of such sale or transfer."

"Sec. 3. Nothing in this act shall apply to sales by executors, administrators, receivers or any public officer conducting a sale in his official capacity, nor to a sale or transfer of stocks of merchandise for the payment of bona fide debts where all creditors share equally and without preference in the sale or transfer or the proceeds thereof."

The grounds of invalidity urged in this case are as follows:

1st. "The effect of the general Act, known as the 'Bulk Sales Law,' Chapter 27, page 66, Thirty-first Legislature of Texas, 1909, restricting the right of merchants or owners of stocks of merchandise to dispose of their own property, is to prefer wholesale merchants as creditors, and give them advantages and privileges which are denied to all other persons. By terms of the statute, a cumbersome and unreasonable burden is placed on a limited class of debtors, and an exclusive separate privilege given to a limited class who are their creditors. The act is therefore class legislation."

2nd. "This statute is unconstitutional because it deprives the retail merchants of this state of the full and free right of contract, and does not deprive any other persons or class of persons of such right. It is in restraint of liberty and property, and makes no discrimination between sales honestly made, and those made to defraud; both are equally void, unless the terms of the statute are complied with."

3rd. "This statute cannot be upheld on the ground that it is a valid exercise of the police power of the State. The Legislature has power to enact reasonable laws for the prevention of fraud, and the protection of creditors, when public necessity demands the same, but the Bulk Sales Law is an unreasonable and unnecessary burden placed on a highly respected and important class of citizens of the State."

The statute gives no preference to any class of creditors. The creditors to be notified embrace all classes. The law provides no special remedy for the collection of debts, that must be according to the general rules of procedure, which apply to all alike. There is not a shadow of a preference in favor of the creditor expressed or implied in the terms of the Act. It is simply notice of the sale that

the creditor gets and the law leaves each creditor to pursue such lawful course as he may elect.

2. It is urged that the statute deprives the retail merchant of the full and free right of contract in the sale of his goods, but does not deprive any other class of debtors of such right. There is no language which makes the law applicable to retail dealers alone, it applies equally to all dealers. It is probable that in practice it will most frequently be, by the facts, made applicable to retail dealers. If, however, it were restricted to retail dealers the restriction would apply to all of that class, and it is not required that a statute should apply to all characters of business or classes of persons. If it applies alike to all of the same kind of business, and to all of the same classes of persons, the law is not in violation of the State or Federal Constitution. Union C. L. Ins. Co. v. Chowning, 86 Texas, 654.

But it is claimed that the effect of the law is to deprive the seller and the purchaser of the liberty of selling and buying as others do and is an unreasonable limitation upon the exercise of those natural rights. In effect the contention is that the act is not a proper exercise of police regulatory power. We regard this as the question in this case, and we will assume that the law is void if not a reasonable exercise of the police power of the State, which is defined thus:

"The private rights of the individual, apart from a few statutory rights, which when compared with the whole body of private rights are insignificant in number, do not rest upon the mandate of the municipal law as a source. They belong to man in a state of nature; they are natural rights, rights recognized and existing in the law of reason. But the individual, in a state of nature, finds in the enjoyment of his own rights that he transgresses the rights of others. Nature wars upon nature, when subjected to no spiritual or moral restraint. The object of government is to impose that degree of restraint upon human actions, which is necessary to the uniform and reasonable conservation and enjoyment of private rights. Government and municipal law protect and develop, rather than create, private rights. The conservation of private rights is attained by the imposition of a wholesome restraint upon their exercise, such a restraint as will prevent the infliction of injury upon others in the enjoyment of them; it involves a provision of means for enforcing the legal maxim, which enunciates the fundamental rule of both the human and the natural law, *sic utere tuo, ut alienum non laedas.* The power of the government to impose this restraint is called *Police Power.*" (Tiedman's Lim. of Police Power, Sec. 1.)

We add the concise and comprehensive definition of Mr. Cooley in his work on Constitutional Limitations (5th ed.), page 706:

"The police of a State, in a comprehensive sense, embraces its whole system of internal regulation, by which the States seeks not only to preserve the public order and to prevent offences against the State, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the

uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others.''

Is the act under consideration a reasonable exercise of the police power of the State?

Men are, individually, largely interested in and dependent upon the success or failure of others, and the public are interested in the protection of the rights of individuals and the prevention of frauds in the transaction of the business of the country.

The Legislature may in the exercise of the police power regulate by reasonable requirements the business transactions of the citizens. Houston & T. C. Co. v. City of Dallas, 98 Texas, 396.

Section 19 of Article I of our State Constitution reads:

''No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.''

We are of opinion that the rights of the parties to buy or sell on the same terms as other persons are secured by the above provision, and the Act of the Legislature, above quoted, must be condemned and held to be void unless it is a reasonable regulation made in the exercise of the police power. We will confine this discussion to that question.

It is clear to our minds that the law is within the authority of the Legislature in the exercise of the police power as defined by the author's quotation above. Our inquiry is thus reduced to the question, is the act as a police regulation unreasonable?

It is claimed, first, that it puts unreasonable limitations upon the power and rights of the seller. The only limitation upon the seller's right is that the sale must be delayed until notice can be given to his creditors, the buyer being required to give notice to the creditors of the seller at least ten days before the purchase is completed; these are the only limitations placed upon the powers and rights of the seller or the buyer.

In passing upon this issue of validity we must hold the Act to be reasonable unless the facts are such as to show with reasonable certainty to the contrary.

We take judicial knowledge of the fact that there have been frequent cases of litigation over such sales and our reports testify that the protection afforded to creditors and buyers under the former laws was quite unreliable, therefore, we conclude that there were sound reasons why the Legislature should adopt some regulation by which the frauds charged and frequently proved might be prevented. The Legislature being empowered to enact the law and there being sound reasons of public policy for its enactment, we reach the question of the reasonableness of the provisions of the law.

Why should one who has purchased a stock of goods on credit object to his creditors knowing that he was selling the stock as a whole? Such merchant does in good morals bear the relation of trustee to his creditor whose property he has taken for sale. To state the proposition is to condemn it as unsound, and we will not undertake to combat by argument such contention. If honest, such debtor would not object to giving such notice; if dishonest, the law should

require it. We conclude that the regulation is reasonable as to the selling debtor and the law valid as to him.

Does the law unreasonably hinder the purchaser so as to impair his rights?

We note first that the notice is not required unless the sale is being made "other than in the ordinary course of trade in the usual and regular prosecution of the seller's or transferer's business; or a sale or transfer of an entire stock of merchandise in bulk." The law declares the transfer by a debtor of all of his property to be a badge of fraud. Bump on Fraud. Con., sec. 47. Likewise a sale out of the ordinary course of business is a badge of fraud. Bump on Fraud. Con., sec. 63.

Thus the buyer has notice that the sale may not be for honest purposes. Wherein can it be said that a buyer is deprived of a right of free purchase by the requirements of this law? If the transaction is honest on his part he should be willing for all creditors to know of it; and if the purpose should be to defraud the creditors, they should be notified. There is no hardship to the buyer in requiring him to give notice of his proposed purchase. Such purchaser loses nothing but a little time. This statute does not make an unreasonable requirement of a purchaser, who is notified by the very manner of making the sale that it is branded by the law as being at least suspicious. There is no unjust or unreasonable burden placed upon the buyer, and the law is valid as to him.

A number of the States have enacted statutes of like character as ours, and the courts of those States have differed in their judgments as to the validity of such laws. We have examined the statutes and decisions of a number of the States, but have not cited or commented upon them because the statute of this State differs materially from those which we have examined, and the well established rules of statutory construction in our court furnish a sufficient guide for ascertaining the effect of our law.

A careful study of the act of our Legislature has impressed the writer favorably as to its reasonableness and fairness. The masses, the consumers of goods, the public, are brought into contact with the retail dealers, and thus the public are interested in their solvency and character; therefore, the provisions which prevent fraud are of interest to the people at large.

The opportunity for fraudulent sales of their stock by retail debtors necessarily has the effect to discredit the class and cause more stringent rules of credit and collection to be adopted. It is especially hurtful to the one with little means who has not made a reputation for fair dealing. The effective preventive which this law provides will give more confidence to the trade, to the advantage of the retail dealer and to the public.

It is a wise provision to place upon the buyer the duty to notify the creditor, for it effectually eliminates from the settlement of such claims the issue of fraud. The creditors cannot prevent the sale on the terms agreed upon, but they may by proper proceeding secure the application of the value of the goods to the satisfaction of their debts. The honest or dishonest debtor pays his debts. The honest

buyer secures the consummation of his purchase with a title that cannot be questioned. How can a law be invalid that secures all honest rights against fraudulent combinations?

We repeat our answer, the law is valid.