## W. L. WYLIE v. W. B. HAYS ET AL.

### No. 3980. Decided June 6, 1924.

### (263 S. W., 563).

1.—Constitutional Law—Impairing Obligation.

The constitutional obligation against laws impairing the obligation of contracts (art. 1, sec. 6) applies only to such as were made prior to the legislative action complained of. (P. 51).

2.—Same—Freedom of Contract—Police Power.

. Valuable rights to contract are protected by the Constitution, Federal and State, guaranteeing due process of law (Const. of Texas, art. 1, sec. 19); but this right may be regulated and in certain instances denied by the Legislature in the proper exercise of the police power when its exercise may reasonably be considered to accomplish the public welfare and is not arbitrary or capricious. (Pp. 51, 52).

**3.—Same—Sale of Land—Powers Given by Contract.**

The evils arising from unrestricted powers of sale created by contract and the course of legislation here and elsewhere, under the State's police power, in limiting the place and manner of such sales are reviewed. (Pp. 52-60).

**4.—Same—Place of Sale.**

The statute requiring all sales of real estate under powers created by deeds of trust or other contracts to be made in the county where the land is situated (Rev. Stats., art. 3759) was a legitimate exercise of the police power for the public welfare, and within the constitutional powers of the Legislature. The history of legislation for the relief of debtors, and especially that restricting or prohibiting sales under powers, is reviewed. (Pp. 52-60.)

**5.—Same—Power of Sale—Contract—Statute.**

' A deed of trust securing a debt by lien on land authorized sale by the trustee on default in payment in the county where the parties resided, which was other than that in which the land was situated and in which sale under the power was required by statute to be made. The existing statute entered into and became a part of the contract of the parties; and a sale made by the trustee, in all respects in pursuance of his contract power save that it was made in the county where the statute required it to be, and not in that in which the trustee was authorized by the terms of the deed to make it, was valid and passed title. (Pp. 60-62).

**6.—Cases Distinguished.**

The rulings in Hess v. Denman Lumb. Co., 218 S. W., 162; Williams v. Baldwin, 228 S. W., 557; Wright v. McAdams Lumb. Co., 234 S. W., 878; Michael v. Crawford, 193 S. W., 1070; are distinguished as not in conflict with this decision. (P. 60).

Question certified from the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

The Supreme Court having referred the questions certified to the Commission of Appeals, Section B, for their opinion thereon, here adopts same as its answer to such questions.

*G. W. Barcus,* for appellant. The deed of trust and the personal contract and agreement between Wylie, who gave the deed of trust, and Hays and Van Wyck, the beneficiaries, having provided specifically that the land if sold must be sold in McLennan County, prohibited the sale in Reagan County, by the trustee and the attempted sale in Reagan County was void. Rudolph v. Hiveley, 188 S. W., 721; Michael v. Crawford, 193 S. W., 1070; Perry on Trusts, 3 Ed., par. 602.

The Statute which provides that sales of land under a deed of trust shall be in the county where the land is located is unconstitutional in so far .as it attempts to prevent parties at interest con-tracting to have sold at some other place, because it is an attempt to prevent men from making contracts with reference to their individual

property.   Constitution of Texas, art. 1, sec. 16; Beitel v. Dobbin,
44 S. W., 299; International Building Assn. v. Hardy, 26 S. W., 497;
Durrell v. Farwell, 27 S. W., 795; Hess v. Denman, 218 S. W., 163;
Williams v. Baldwin, 228 S. W., 557; Wright v. McAdams Lumb.
Co., 234 S. W., 878.

*S. E. Stratton.* for appellee.   A trust deed is not incapable of
execution because of the power given to sell the mortgaged land in a
county other than that in which it is situated.   The statute, Article
3759, requiring such sales in the county where the land is situated,
prevails over an agreement for sale elsewhere, and enters into and
forms a part of the contract, and sale duly made in the county
where the land lies, passes title.   Kerr v. Galloway, 94 Texas, 641.

The right to make contracts is not absolute but is a qualified right
and subject, in the exercise of the police power of the state, to reason-
able restraint in the interest of the public welfare.   12 C. J., p. 1200,
sec. 966. and note; 12 C. J., p. 948, sec. 460, and note; McGuire v.
Chicago B. & O. Ry. Co., 219 U. S., 549, 575; Schmidinger v. Chicago,
44 L. R. A. (N.S.) 632; Rose v. Harlee, 48 S. E., 541; First Tex. St.
Ins. Co. v. Smalley, 233 S. W., 314, par (2).

The foreclosure of a mortgage, the constructive seizure of the land
described therein, the sale of the same and the consequent divesting
of title out of the debtor and the vesting of such title in a purchaser
at such sale without the present consent or participation of the debtor
is a judicial function which the state has a right to control and
regulate.   The right to provide by express stipulation for a summary
foreclosure through the exercise of a power of sale vested in a trustee
in a. deed of trust does not exist except where authorized or permitted
by law.   Such authority or permission is not universal, but is said to
exist in about 30 states.   13 Am. & Eng. Ency. Law [2nd Ed.], p. 782,
783; 27 Cyc., p. 1449-1450; First Nat'l Bank v. Bell Silver & Copper
Mining Co., 19 Pac., 403-414; Lulu & White Silver Mining Co. v.
Nevin, 15 Pac., 611; Thompson v. Marshall, 27 Pac., 957; Wheeler v.
Sexton, 34 Fed., 154; Pingrey on Mtgs., Vol. 2, p. 1224, sec. 1313-14.

The power to prohibit summary foreclosures includes the lesser
power to regular the exercise of the same in such manner as in the
opinion of the legislature will best subserve the interest of the general
public. 27 Cyc., p. 1450, par. (b); Webb v. Haeffer, 53 Md., 187.

The courts exercise their power in declaring statutes unconsti-
tutional and void with the greatest possible caution and are always
reluctant to strike down a solemn enactment of the legislative branch
of the government, and they will never do so unless the invalidity
of such enactment is, in their judgment, beyond a reasonable doubt.
6 R. C. L., p. 74, sec. 674; Waldschmidt v. City of New Braunfels,
193 S. W., 1077; Commonwealth Ins. Co. v. Finegold, 183 S. W., 833;

Territory of Washington v. Ah Lim, 9 L. R. A., 395; Wenham v. State, 58 L. R. A., 825; State v. Hogriever, 45 L. R. A., 504.

The passage of the Act in question by the Legislature of this State was in effect a legislative declaration that the public interest would be subserved by its passage and enforcement, and that public policy required the same, and the legislative determination, except when clearly repugnant to constitutional provisions is conclusive on the issue of public policy. 6 R. C. L., sec. 108; McGuire v. Chicago B. & Q. Ry. Co., 219 U. S., 549, 575; Holden v. Hardy, 169 U. S., 366; Ex Parte White, 198 S. W., 583.

The legislative power has continually recognized as a matter of common knowledge that the necessitous debtor is proverbially improvident in entering into harsh and burdensome contractual obligations for the purpose of securing immediate pecuniary aid, and it has always assumed authority to protect the debtor from unreasonable and unconscionable exploitation along this line. Ex parte White, 198 S. W., 583; Curtis v. O'Brien, 20 Iowa, 376, 89 Am. Dec., 543; Kneettle v. Newcomb, 22 N. Y., 249, 78 Am. Dec., 186; Maloney v. Newton, 85 Ind., 565; Ex parte Hutsell, 182 S. W., 458; McGuire v. Chicago B. & Q. Ry. Co., 219 U. S., 549, 575.

The provisions of the statute under consideration are reasonable and a proper exercise of the police power in that their observance will tend to aid in securing a fair price for property sold under summary foreclosure through power vested in a trustee by the terms of the mortgage or trust deed. The state of the title to lands, their quality and value are generally known in the county where the same are situated, and such knowledge is indispensable to securing a fair price therefor at public sale. No surer way of sacrificing landed estates could be devised by a harsh, exacting and designing creditor than to require as a condition of the loan to secure which the land is pledged, that in event of default in payment the sale should be made at some remote point in the State and among a people who ordinarily know nothing of the property to be sold, and who have no opportunity to put the land, if purchased, to practical use. Ventres v. Cobb, 105 Ill., 33.

MR. JUDGE STAYTON delivered the opinion of the Commission of Appeals, Section B.

Certified questions from the Court of Civil Appeals for the Third Supreme Judicial District, in an appeal from McLennan County. The statement and questions arising as certified by the Court of Civil Appeals are as follows:

"The appellant brought this suit against appellees, for the purpose of trying title to a certain tract of land. The trial resulted in a judgment for the defendants; and the plaintiff has brought the case to

114 Tex. Sup.—4.

this Court by appeal, and it has been submitted on briefs and oral argument of both parties.

"The defendants' title and the correctness of the judgment appealed from depend upon the validity of a trustee's sale made under a Deed of Trust executed by the plaintiff, C. L. Wylie, to W. B. Hays Jr., as Trustee, for the use and benefit of W. B. Hays and W. O. Van Wyck, dated March 25, 1916. The land which was conveyed by the Deed of Trust is situated in Reagan County, Texas, but it is stipulated in the instrument referred to that in case of default and a sale by the Trustee, such shall be made at the Courthouse door of McLennan County. At the time the Deed of Trust was executed, all the parties interested therein resided in McLennan County. Appellant failed to pay the debt when due, and, at the request of the beneficiaries, a Trustee's sale was made, and the Deed of Trust thereby foreclosed, not in McLennan County, but in Reagan County, where the land is situated; and the appellees hold under that sale.

"It is provided by Article 3759 that sales of real estate, made under powers conferred by Deeds of Trust or other contract lien, shall be made in the county in which such real estate is situated. Appellant challenges the constitutionality of that statute, and contends that, if it was intended by the Legislature to thereby deprive the parties to trust deeds or mortgages with power of sale from stipulating in the instrument creating the lien that, if the property is sold by the Trustee such sale shall be made at some place other than the county in which the land is situated, then the statute is violative of both the Federal and State constitutions, because it constitutes an arbitrary and unreasonable restriction upon the power of individuals to make contracts concerning their own business affairs.

"On the other hand, it is contended by appellees that the statute in question is a proper exercise of the police power vested in the Legislature, and it is therefore constitutional.

"There may be some decisions in this State which tend to support appellees' contention, but the later cases of Hess v. Denman, 218 S. W., 162; Williams v. Baldwin, 228 S. W. 557; Wright v. McAdams Lumber Co., 234 S. W., 878; and Michael v. Crawford, 108 Texas, 352; 193 S. W. 1070, it seems to us, tend to support appellant's contention.

"Appellant further contends that since the Deed of Trust which he gave provides that the land if sold by the Trustee, should be sold in McLennan County, and since the pretended sale of the land under the Deed of Trust was made in Reagan County, where the land was located rather than in McLennan County, where the Deed of Trust provides same should be sold, that the pretended sale by the Trustee was void and passed no title because the Trustee did not have the power to sell the land in Reagan County.

"The questions which are thus presented are of importance, and in order to secure a final decision as early as possible, this Court has decided to and does hereby certify to the Supreme Court for its decision the following questions:

"First: Is Article #3759 of the Revised Statutes of Texas unconstitutional in so far as it attempts to prevent or prohibit the owner of property from making a contract to have his land sold under a Deed of Trust lien in any county except where the land is located?

"Second: Did the Trustee have the right to sell the land in this instance in Reagan County when the Deed of Trust provided that it should be sold, if at all, in McLennan County?

"Third: Did the sale by the trustee of the land in Reagan County pass any title in view of the fact that the Deed of Trust provided that the land if sold by the Trustee should be sold in McLennan County?"

In addition to the ground of attack mentioned in the certificate, appellant, in a written argument lately filed, assails the statute as being in contravention of Section 16, Art. 1 of the constitution of Texas by "impairing the obligation of contracts". But it would be impossible in this case for that limitation to apply, because it has reference alone to contracts made prior to the legislative action complained of, and hence to vested rights; whereas the deed of trust in this case was executed after the statute that is mentioned in the certificate had been in force for many years. The solution of the questions certified will therefore depend not upon the rules regarding the impairment of the obligation of contracts or retroactive laws but upon the application of the elements stated in the certificate, that is, the liberty of contract on the one hand and the operation of the police power on the other. Freund, Police Power, Secs. 499, 555-557.

That a power of sale created by a deed of trust, or other contract lien, is a valuable contractual right, the full and free exercise of which is maintained by the provision of the Fourteenth Amendment to the Federal Constitution guaranteeing due process of law and by the corresponding provision of the Texas Constitution in Section 19, Art. 1, is clear; and that this right may be regulated or in certain instances denied by the legislature in a proper use of the police power, is equally clear and most thoroughly settled.

The controlling questions presented are, when and in what manner this power may be exercised to the extent of depriving citizens of the full and free enjoyment of their liberty of contract and whether the statute under investigation is a valid expression of that power.

While the statement is perhaps too liberal to the side of constitutional attack, it may be safely said that if a law regulating contracts to be executed in the future has as its object that which may be clearly and reasonably considered by the legislature to be the public

welfare, prescribes means reasonably calculated and necessary to aid in accomplishing that object, and operates in a reasonable and not an arbitrary, capricious or oppressive manner, it is within the police power, constitutes due process of law and, consequently, is superior to the liberty of contract. Houston & T. C. v. Dallas, 98 Texas, 412, 70 L. R. A., 850, 84 S. W., 648; Nash Hardware Co. v. Morris, 105 Texas, 217, 146 S. W., 874; Spann v. City of Dallas, 111 Texas, 350, 19 A. L. R., 1387, 235 S. W., 515; Lawton v. Steele, 152 U. S., 133, 38 L. Ed., 385; Holden v. Hardy, 169 U. S., 366, 42 L. Ed., 780; Atlantic Coast Line v. Riverside Mills, 219 U. S., 203, 31 L. R. A. (N. S.) 7, 55 L. Ed., 167; Chicago B. & Q. Ry. Co. v. McGuire, 219 U. S., 549, 55 L. Ed., 328; Schmidinger v. Chicago, 226 U. S., 583, Ann. Cases, 1914B, 284, 57 L. Ed., 374; Waldschmit v. City of New Braunfels, 193 S. W., 1078, Freund, Police Power Secs. 3, 499, and authorities below cited.

In the examination of the statute under consideration, the first two of the elements above mentioned may be conveniently considered together,—that is, whether the object of the law and the means used are within the requirments of the foregoing statement.

The statute was first enacted in 1889, remained in the same form untli 1915 and in that year was twice amended, the legislature on each occasion substantially preserving the original features and perfecting them, and at all times requiring that the place of sale should be in the county where the land lay. The last amendment will be quoted (with the exception of parts of it pertaining appropriately to sales in unorganized counties and to cases where the incumbered land lies in more than one county):

"All sales of real estate made in this State under powers conferred by any deed of trust or other contract lien shall be made in the county in which such real estate is situated. . . . . . Notice of such proposed sale shall be given by posting written notice thereof for three consecutive weeks prior to the day of sale in three public places in said county. . . . one of which shall be at the court house door of the county in which such sale is to be made,  . . .  or such notice may be given as required by statute in case of judicial sale, or such notice may be given in either of said methods, or as may be provided for in said deed of trust or contract lien; and such sales shall be made at public vendue, between the hours of 10 o'clock a. m. and 4 o'clock p. m. of the first Tuesday in any month. . . . . . ."

It will be seen that this statute contains four regulations: that every sale of land made in this State under a power of sale shall be held upon notice, at a regular time, at public auction, and in the county where the land lies. In considering what the object of the regulations is and whether they come within the police power, it will be proper to observe some general principles and to apply them.

"A large discretion is necessarily vested in the legislature to determine not only what the interests of the public may require" but also "what measures are necessary for the protection" of those interests. Moreover, "laws are seldom wiser than the experience of mankind". And, when a principle, or the substantial policy of it, has been maintained through numerous vicissitudes and for centuries in England and has thereafter, without dispute, lasted in the United States and in Texas for long periods of time, it becomes impossible to say that it cannot reasonably be considered by the legislature of this Sate as a proper element of the public welfare. This race of people will not bear steadily and without complaint what is not good for it and no law or policy can constantly withstand the average public sentiment. Spann v. City of Dallas, 235 S. W., 513, 111 Texas, 350, 19 A. L. R., 1387; Holden v. Hardy, 169 U. S., 390, 42 L. Ed., 780; Chicago B. & Q. Ry. Co. v. McGuire, 219 U. S., 549, 55 L. Ed., 328; Schmidinger v. Chicago, 226 U. S., 583, Ann. Cases, 1914B, 284, 27 L. Ed., 364.

There has never been a time in history at which some protection to debtors has not been afforded, or demanded and finally attained. Among the hardships that have long been commonly abolished in many countries and particularly those mentioned, are slavery for debt, imprisonment for debt, penalties in bonds, mortgages amounting to conveyances of the fee, extortionate rates of interest, and warrants to confess judgment. Among the benefits that have been conferred upon debtors, are statutes of insolvency and bankruptcy, and stay and exemption laws.

The instance of mortgages of land is not only directly applicable to this case but it involves a conflict and an outcome that may be recalled in substance by every lawyer. Only some of the salient points of this need be mentioned.

The common law by the fifteenth century regarded a mortgage as a conveyance of an estate in fee on condition, that became indefeasible upon default in the payment of the secured debt. The Court of Chancery, viewing the transaction as a security for the payment of money, at first allowed the mortgagee to redeem his land at any time, or at least at any reasonable time, by payment of the principal and charges due; and later entertained bills to put an end to this period for redemption, and allowed a sale to be had upon foreclosure, and a just application of the proceeds made. When the creditor adopted the device of contracting with the debtor against the equitable consequences of mortgages, including the equity of redemption, the Court of Chancery commonly avoided such agreements under the doctrine, "once a mortgage always a mortgage". Jenks, Short History of English Law, pp. 124-126, 215, 249; Simkins on Equity, 352; First National Bank v. Bell Silver etc. Co., 8 Mont., 32, 19 Pac., 403

(Mont.) Pingree on Mortages, Secs. 1313-1314; II Blackstone pp. 158-159.

That the human mind and sentiment naturally arrive at that conclusion is evidenced unmistakably and constantly in secular and religious literature and general and legal history, the mere suggestion of which will suffice to recall numerous instances. In observing how ancient, established and fundamental the impulse is, the following literal translation of the law of a dimly ancestral civilization, which is taken from Johns. Oldest Code of Laws, etc., p. 58, will not be out of place:

" 'If a man has taken money from a merchant and has given a plantation of dates to the merchant, has said to him, 'The dates that are in my plantation take for thy money,' that merchant shall not agree, the dates that are in the plantation the owner of the plantation shall take, and he shall answer to the merchant for the money and its interests according to the tenour of his bond. The dates that are over, which are in the plantation, the owner of the plantation shall take forsooth' ''.

The principle that a mortgage shall not have the effect of a conveyance is quite firmly established in America.

A few of the States, it is true, have followed the common-law theory but they have done so with liberal modifications. Most of the States, including Texas, have never countenanced it, but have steadily followed, or softened and even extended, the equity doctrine.

The experience with powers of sale in mortgages and deeds of trust, which are generally equivalent, is an important development of the same principle. These powers furnish to mortgagees a modern method of foreclosure preferable to that by suit; and, as long as they are not the subject of abuse, should be favored as furnishing a speedy method of settlement outside of court.

But it is common knowledge that in the absence of statutory regulations to the contrary, these powers are capable of being so worded as practically to prevent a mortgagor from saving his equity in the land.

The power of sale has frequently been found to be "a device to escape redemption". For instance, the instrument may dispense with notice of sale, may provide for a place of sale beyond the boundaries of the country where the land lies and remote from it, may leave the selection of the place of sale to the trustee or mortgagee, and may stipulate that the sale be private; and these provisions have been held valid. Jones on Mortgages, Secs. 1821, 1846; Wheeler v. Sexton, 34 Fed., 154; Pingree on Mortgages, Sec. 1313. In Texas prior to 1889 sales under deeds of trust that were conducted outside the county where the land lay seem to have been frequent, and the practice obtained, and was upheld, of leaving the selection of the

place of sale to the trustee. Hess v. Dean, 66 Texas, 663, 2 S. W., 727; Greenwood v. Fontaine, 34 S. W., 827; Beitel v. Dobbin, 44 S. W., 301; Belcher etc. Co. v. Taylor, 212 S. W., 648.

The abuse of powers of sale in America is recognized as having led to their regulation and in some instances even to their prohibition. Ventress v. Cobb, 105 Ill., 33; Finlayson v. Peterson, 5 N. D., 587, 33 L. R. A., 532, 67 N. W., 953, 57 Am. St. Rep., 589; Pingree on Mortgages, Secs. 185, 1313.

In 1882 the Supreme Court of Illinois said in the case first cited: "Trustees frequently, if not generally, seem to suppose they are the mere agents of the creditors, to aid them in obtaining advantages over the debtor, and not infrequently lend themselves to the creditors to oppress and wrong the debtor. Such trusts have been the source of abuse and oppression to such an extent, that the legislature, no doubt for that reason, was largely influenced in prohibiting sales under such powers, and has required them to be foreclosed in equity, that the rights of those making such instruments may be protected."

That an evil was thought to exist by reason of the abuses referred to and that these powers were considered as tending, always, to deprive mortgagors of their equity of redemption and as working against what the law had for so long recognized was for the public welfare, will likewise be evidenced by the course of legislation in this country.

Before Texas acted upon the situation, not less than fifteen States of the Union had done so in one or more instances. In at least eight instances notice of sale had been required; in six, sale had been confined to the county where the land lay; in the same number, redemption had been provided for after the purchaser obtained deed; in one, a bond before and a confirmation by court after the sale had been made a condition of title in the purchaser; and in four, sales under powers had been prohibited, and foreclosure in court required. And it may be added that after the year in which the State of Texas acted, the number of States that passed or remained with laws of this sort regulating such sales was not less than thirty-five, and that by the present year sales under powers are altogether prohibited in at least nine of these and in one territory. Jones on Mortgages (5th Ed.) pp. 613-646; Stimson, American Statutory Law, Sec. 1924, Martindale's Am. Law Directory, pp. Ia,

It seems apparent that both before and after 1889, the year in which the Texas statute became a law, unrestricted powers of sale were being widely considered as an evil that was calculated to work against the public welfare; and were being progressively dealt with as such.

It is reasonable to suppose that the legislature at the time when

the present law was passed and amended had in mind some such view as this:

At one time or another practically every member of the public might be affected by these powers of sale. They furnish the means by which contract liens could be turned, for practical purposes, into absolute deeds, thus not only oppressing debtors and mortgagors in contrariety to a settled and long-existing policy, but also being calculated to result in uncertainty and in conflicts as to an important branch of popular credits. For a liberty on the part of those who loaned money on the security of land to contract with their borrowers that, on default, a private sale of the land might be made without notice and at any time or place, was calculated to throw mortgagees at the mercy of mortgagors or at least to make the probability of fair and peaceable foreclosure remote.

In the light of what has been observed, it is thought that the provision of the Texas statute, which makes it necessary for the sale in this State to take place in the county where the land lies, being the one in question in this case, is calculated to be a wise regulation and one that is for the public welfare. The size and extent of the State of Texas furnish so wide a range as to place of sale, that, if the matter be left without regulation, provisions can be readily made in any mortgage or deed of trust that will render the preservation of the mortgagor's rights at a sale extremely inconvenient if not impossible, and that, because of the remoteness and inaccessibility of the land and of the records of title to the property, are calculated to destroy bidding, in that strangers to the land and its possession and title will not ordinarily be willing to purchase. Moreover, the provision in this statute as to the place of sale does not stand alone but is and should be considered as an integral part of regulations which in their entirety require, as already observed, notice, sale in the county where the land lies, customary days and hours, and public auction, and accentuate the beneficial effect of the whole scheme which, to say the least, is materially aided by the regulation as to place of sale. These provisions reasonably tend to assist in guaranteeing that mortgages and deeds of trust shall not have the effect of absolute conveyances but shall have that of security only.

If it be suggested that the statute is in behalf of mortgagees and not of the public, the reply is that almost all regulations relative to contracts are at one time or another in behalf primarily of particular individuals but that in such instances they are frequently considered to be a benefit to the public, as they sooner or later, either directly or indirectly, affect every citizen. Bankruptcy and insolvency laws and practically all of the laws that remove the debtor from the mercy of the creditor are influenced by this principle. There is this element in it, from the standpoint of the people: " 'The

state retains an interest' in the individual's 'welfare, however reckless he may be' ...'When the individual health, safety and welfare are sacrificed or neglected, the state must suffer' ''. Holden v. Hardy, 169 U. S., 397, 42 L. Ed., 780; C. B. & Q. R. R. Co. v. McGuire, 219 U. S., 571, 55 L Ed., 328. Or, as expressed by Chief Justice Brown in holding the Bulk Sales law valid, ''men are, individually, largely interested in and dependent upon the sucess or failure of others, and the public are interested in the protection of the rights of individuals and the prevention of frauds in the transaction of the business of the country. The legislature may in the exercise of the police power regulate by reasonable requirements the business transactions of the citizens''. Nash Hardware Co. v. Morris, 105 Tex., 224, 146 S. W., 876.

If it be thought that the regulations in question are not within the police power because they protect men against their own acts, the answer is that all regulations as to contracts do that, and frequently do so upon the principle that the parties in such cases do not contract with equal freedom.

Upon this doctrine the United States Supreme Court in Chicago B. & Q. Ry. v. McGuire, 219 U. S., 549, 55 L. Ed., 328, held valid a statute prohibiting railroad companies from obtaining prospective release of liability for personal injuries to employees, and the same court in Holden v. Hardy, 169 U. S., 366, 42 L. Ed. 780, upheld a statute limiting the hours of labor of underground miners.

In the latter case, the reason stated was, that the parties ''do not stand upon an equality, and their interests are, to a certain extent conflicting . . . . . the proprietors lay down the rules and the laborers are practically constrained to obey them. In such cases self-interest is often an unsafe guide, and the legislature may properly interpose its authority.''

Professor Fruend expresses the same idea in this way:

''Economic oppression regularly proceeds with the apparent con sent of the oppressed whose weakness compels him to accede to the onerous terms, and such oppression cannot be dealt with otherwise than by restraining the freedom of contract. To emphasize this freedom in the face of oppression, is to deny the legitimacy of the police power for the protection of economic liberty.'' Police Power, Sec. 503.

And as between debtor and creditor in a case involving exemption laws, the application of a rule akin to that indicated by Freund and very appropriate to the subject matter of this case had as early as 1860 been stated thus by the New York Court of Appeals in the case of Kneettle v. Newcomb 22 N. Y. 249, 78 Am. Dec., 186:

''Every honest man who contracts a debt expects to pay it, and believes he will be able to do so, without having his property sold on

execution. No one worthy to be trusted would, therefore, be apt to object to a clause subjecting his property to levy on execution in case of non-payment''.

The Court also said that, among other things, the legislature undertook to provide against the consequences of the debtor's ''over-confidence'', and ''his own improvidence in giving such consent''; and continued, by way of elucidation:

''The statutes contain many examples of legislation based upon the same motives. The laws against usury, those which forbid imprisonment for debt, and those which allow a redemption after the sale of land on execution are of the same class. So of the principle originally introduced by the courts of equity, and which has been long established in all courts, to the effect that if one convey land as security for a debt, and agree that his deed shall become absolute, if payment is not made by the day, he shall be entitled to redeem on paying the debt and interest . . . In these cases the law seeks to mitigate the the consequence of men's thoughtlessness and improvidence.''

To this the Supreme Court of the United States adds in the present year:

''Whatever may be one's opinion about the wisdom of trying to save the ignorant and rash from folly it is a recognized power that is used in many ways.'' Dillingham et al. v. McLaughlin et al. Adv. Ops. 441, 44 Sup. Ct. Rep. 362.

It is considered, therefore, that the statute under investigation, though its direct operation is in behalf of individuals and though it serves to protect them against their own contracts, may none the less be for the public welfare.

A number of decisions illustrating, either by analogy or directly, that the statute may be considered as having that effect will be briefly stated.

In First Texas Ins. Co. v. Smalley, 233 S. W., 317, a statute was upheld that made life insurance policies payable in full notwithstanding provisions in them to the contrary. In Burgess v. Western Union Telegraph Co., 92 Texas, 125, 71 Am. St., 833, 46 S. W., 794, a statute was sustained that forbade clauses in contracts requiring, as a condition of suit, a notice of damages within less than ninety days. In Rose v. Harllee, 69 S. C., 523, 48 S. E., 541, the Supreme Court of South Carolina held a statute valid that required the description in chattel mortgages to be in writing instead of printing. In McFadden v. Blocker, 3 Ind. T., 224, 58 L. R. A., 894, 54 S.W., 874-876, the Court of Appeals of Indian Territory refused, in response to an attack in behalf of mortgagors, to disturb a statute requiring mortgagees in certain cases to take possession of encumbered personalty. In Webb v. Haeffer, 53 Md., 189, the Court, in disapproving a sale under power in a place outside the county where the land was lo-

cated, said, with especial reference to the statute of Maryland already referred to, requiring, as it did, not only sale in the county or city where the land lay, but also bond before and judicial confirmation after sale, that parties are "ordinarily left free to contract, but they will not be permitted to do so in violation of statute regulations."

No decision either of this or any other State has been found that holds a statute of the kind under investigation to be unconstitutional in so far as it is not retroactive, although it must be manifest that, had the public not been long acquiescing in this class of legislation, many decisions would have been handed down that pass directly upon the point.

This circumstance of acquiescence in Texas and other States, the the usual well-known prolixity and intricacy of mortgages and deeds of trust with powers of sale that are in use in this State, the recognized exigencies usually attending the borrowing of money on security, the comparative inequality of lenders and borrowers, the abuses which have occurred and are calculated to occur by leaving powers of sale completely in the hands of those whose inclination or interest it is to accomplish as much return as they can for money that is loaned, the strongly marked and deeply intrenched policy of protecting debtors against the harsher exactions of creditors and mortgagees and against the tendency of mortgagees to turn mortgages into titles, the enactment of so many modern legislatures upon this subject, and the decisions above cited, serve to show that, however sacred is the right of liberty of contract, however carefully it should be guarded and enforced under ordinary circumstances, and however beneficial are sales under powers, the statute involved in this case, in the light of the discretion vested in the legislature, has reasonably for its object the welfare of the public, is reasonably calculated and necessary to aid in effecting that object, and is therefore within the valid exercise of the police power and constitutional, unless, as already stated, the provisions, when applied, will operate in an arbitrary, capricious or oppressive manner.

This last feature need be noted only briefly.

The statute imposes no undue hardship upon the creditor, for it reasonably gives him the same opportunity as creditors under execution or order of sale have, and have had since the State was organized, and affords him a fair opportunity to obtain back his money, because the sale is designed to be made at such a time and place and in such a manner that mortgagors and bidders are more apt to attend than would ordinarily be the case were the sale to be made in some strange and remote county of the State. Occasional instances of hardship may occur, but the law must necessarily be made for the average case as nearly as possible and admit exceptions by legislation, as they become important. The only material thing

of which this statute tends to deprive the creditor, seems to be a likelihood of being able to take the land at his own price; and of this, human sentiment would seem to design that he should be deprived.

The benefits to the debtor lie mainly in his protection against losing his equity of redemption; and as far as the law goes, it imposes no hardship upon him.

It is thought that the first certified question, as to whether the statute is unconstitutional, should be answered in the negative.

Each of the cases cited in the certificate of the Court of Civil Appeals as tending to a contrary conclusion is based upon the decision in Hess v. Denman Lumber Co., 218 S. W., 162, and involves an act of the legislature which had the effect of requiring any person who might build improvements by contract, to obtain from the contractor a bond to protect materialmen and workmen, who might be employed by the latter, in the payment of the amounts due them. The court held that the act was unconstitutional because it interfered with the liberty of contract and was not a valid exercise of the police power. Points stressed in the opinion were that the materialmen and laborers already had the privilege of a lien, that there was no privity of contract or legal relation between them and the owner of the premises and that the law sought to effect a ''compulsory contract purely''.

It is considered that this line of cases can have no affect upon the one under consideration because in them the necessity and reasonableness of the regulations, if present at all, was not present in the degree and to the extent that is here found and because their subject-matter bears no analogy to this case. The main difference is in the nature of the contracts that are regulated by the two statutes. No likeness is seen between a statute that seeks to regulate contracts that may be reasonably viewed as harmful to the public welfare, as in the present case, and a statute that seeks to impose duties or liabilities toward strangers upon the execution of contracts that have never been and cannot reasonably be viewed as harmful to the public welfare, as in the cited cases.

The conclusion that has been reached in the present case is not thought to be in conflict with the cases just considered.

A negative answer to the first question certified practically disposes of the other two questions, because they are dependent upon the first. Briefly stated, they are, whether the trustee in the present case had a right to sell the land and whether title under his sale was valid, in view of the fact that the sale although made in the county where the real estate was situated, was not made in the county designated by the deed of trust to be the place of sale. ·

In the consideration of these questions, it is assumed as the certificate and a quotation from the deed of trust in one of the briefs indicate, that the words of the deed of trust were to the effect that the trustee, in case of default in payment of the note that was secured, should sell the property in McLennan County after notice, etc., the point being that a different county from the one in which the land lay was so stipulated.

If the statute does not interfere with the liberty of contracting contrary to its provisions, it seems that it would not have been passed, because it can have no other use.

While it is ordinarily the rule that a power of sale must be executed strictly in accordance with the instrument that grants it and that it admits "no substitution and no equivalent", an exception to the rule is, that, where a valid statute regulates the operation of the power and where the deed of trust granting the power has been executed and delivered after the statute has become effective, the provisions of the latter supersede and are read into the former just as if set out in it. Kerr v. Galloway, 94 Texas, 645, 64 S. W., 858; Perry on Trusts (5th Ed.) Sec. 602a; Polk v. Dale, 93 Miss., 664, 17 A. & E. Anno. Cas. 754, 47 So., 386.

The leading case is Kerr v. Galloway, where Chief Justice Gaines said of the original of the article involved in this case:

"The contention is that since this provision makes it imperative that all sales under mortgages and deeds in trust shall be made in the county where the land is situate, and since the stipulation in the instrument in question authorizes a sale in Navarro County only, the power is incapable of execution and must fail altogether. This contention is based upon the proposition that a power of sale given in an instrument of the character of that in question must be executed strictly in accordance with its terms or not at all. The proposition, as a general rule, is sound, but in our opinion, is not applicable in the present case. Construing the article quoted above, the Court of Civil Appeals have held in substance that the effect of the provision is to make all powers contained in mortgages or deeds in trust, which provide for a sale of real estate elsewhere than in the county in which the property is situate, be ineffectual for any purpose. We do not doubt that the Legislature may so provide as to all transactions of the character in question consummated subsequent to the passage of the law. But did the legislature so intend by the statute under consideration? . . . . . The parties to an agreement are presumed to know the law and to stipulate with reference to it and to make it a part of the contract.

"So, in this case, since the law requires property subject to a power of sale given in a mortgage to be sold in the county where the property is situated, wherever a power of sale is given, that requirement

becomes a part of the contract, and a stipulation for a sale in a different county is merely void in itself and does not destroy the power. A sale at the place designated by the statute complies with the rule that the power must be executed strictly in accordance with its terms for the reason that the law becomes a part of the contract and overrides the express stipulation as to the place of the sale."

ı  This decision of the Supreme Court requires that the latter two of the three questions certified, be answered in the affirmative; and the intimation in it that the Legislature had the power to regulate future contracts by the Act involved in this case, reinforces the conclusion already reached with regard to the first of the questions.

We recommend that the first question, as certified be answered in the negative and that the second and third questions be answered in the affirmative.

The opinion of the Commission of Appeals answering certified questions is adopted and is ordered certified to the Court of Civil Appeals.

<div align="right">

*C. M. Cureton,* Chief Justice.