Opinion issued March 11, 2004















In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-01-00460-CV




RICHARD J. SEGAL, JUDITH SEGAL, JOE FOGARTY, AND NANCY
FOGARTY, Appellants

V.

EMMES CAPITAL, L.L.C., Appellee




On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2000-06408




OPINION ON REHEARING
          Appellants Richard J. Segal and Judith Segal (“the Segals”) have moved for
rehearing, as have appellants Joe Fogarty and Nancy Fogarty (“the Fogartys”). 
Appellee, Emmes Capital, L.L.C. (“Emmes”), has responded to both rehearing
motions. We have granted the Segals’ unopposed motion to supplement the appellate
record on rehearing. We now grant the rehearing motions. Although we withdraw
our opinion and judgment dated October 10, 2002 and issue this opinion and
judgment in their place, our ultimate disposition of the trial court’s judgment remains
unchanged.
          The Segals and the Fogartys (collectively, “appellants”) appeal a judgment
rendered after the trial court granted the summary judgment motion of Emmes and
denied the Segals’ and the Fogartys’ summary judgment motions. We affirm.
I. Standard of Review and Burden of Proof
          We follow the usual standard of review for an order granting one party’s
summary judgment motion, and denying other parties’ summary judgment motions,
under rule 166a(c) without specifying grounds. See Tex. R. Civ. P. 166a(c); Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001) (summary judgment order not
specifying grounds); Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999)
(order granting and denying cross-motions for summary judgment); Science
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997) (standard of review and
burden under rule 166a(c)).
 
II. Background
          The Fogartys and the Segals had ownership interests in Jojac/Sejac, Ltd., a
limited partnership (“the borrower”). To purchase three pieces of real estate in Texas,
the borrower executed a promissory note (“the note”) for $6,850,000 in favor of
Emmes. On the same day, the borrower secured the note by a first lien, conveyed by
a deed of trust (“the deed of trust”) in Emmes’s favor, on the three properties. Also
on the same day, appellants executed an unconditional guaranty agreement (“the
guaranty”), by which each agreed to be jointly and severally liable for, among other
things, “any liability of the Borrower to [Emmes] pursuant to any documents executed
and/or delivered in connection with any indebtedness of the Borrower to [Emmes],”
including the “debt secured” portion of the deed of trust.
          The note matured in 1998, and the borrower defaulted. In the spring of 1999,
the borrower filed for Chapter 11 bankruptcy. Apparently because the bankruptcy
stayed enforcement actions against the borrower and its collateral, Emmes sued the
Segals and the Fogartys in New York (“the New York suits”) in April 1999 to recover
on the guaranty. See N.Y. C.P.L.R. § 3213 (McKinney 1992). In June and August
1999, the trial court in the New York suits rendered two judgments for Emmes
against all appellants for a total of $4,609,076.77. In July 1999 and May 2000,
respectively, Emmes sought to domesticate and to enforce the New York suit
judgments in Texas by a lawsuit styled Emmes Capital, L.L.C. v. Joe Fogarty et al.,
cause no. 1999-38061, in the 281st District Court of Harris County, Texas (“the first
Texas suit”). See Tex. Civ. Prac. & Rem. Code Ann. § 35.001-.008 (Vernon 1997).
          On September 10, 1999, the bankruptcy court entered an order, agreed to by
the borrower, Emmes, and appellants, modifying the automatic bankruptcy stay (“the
agreed bankruptcy order”). The agreed bankruptcy order provided, among other
things, that, if the borrower did not pay Emmes the remaining amount owing on the
note by December 3, 1999, the automatic stay would lift to allow Emmes to foreclose
on the deed-of-trust property on December 7, 1999. 
          The borrower paid some, but not all, of the debt, and the stay thus lifted
automatically. Emmes sold the three deed-of-trust properties by non-judicial
foreclosure sale on December 7, 1999 in Harris County. Emmes was the high bidder
on all three properties, purchasing them for $1,550,000 total. The parties and the
record are unclear about how much deficiency remained after the foreclosure sales,
but a deficiency did remain.
          In early 2000, the Fogartys and the Segals counterclaimed against Emmes in
the first Texas suit, alleging that the three properties were sold for less than fair-market value and seeking a determination and declaration under Texas law of the
properties’ fair-market value and an offset in that amount from any deficiency
judgment. See Tex. Prop. Code Ann. § 51.005 (Vernon 1995) (allowing guarantor
to challenge fair-market value of property sold in non-judicial foreclosure sale as
prelude to seeking offset from deficiency amount). The Segals expressly pleaded
Property Code section 51.005.
          On February 2, 2000, shortly after having filed their counterclaim in the first
Texas suit, the Fogartys filed their own suit against Emmes—Joe Fogarty & Nancy
Fogarty v. Emmes Capital, L.L.C., cause no. 20009-06408, in the 281st District Court
of Harris County, Texas (“the second Texas suit”)—for a determination of the three
properties’ fair-market value and an offset in that amount from any deficiency
judgment.


 The Segals intervened in the second Texas suit on March 1, 2000,
requesting the same determination and declaration as the Fogartys did and, again,
expressly referencing Property Code section 51.005. The parties agree that the first
and the second Texas suits had substantially identical parties and issues. This appeal
is from the final judgment in the second Texas suit, and the remainder of this opinion
concerns that suit’s procedural history.



          The parties then filed various summary judgment pleadings. Before discussing
those pleadings, we note that, in the second Texas suit, with few exceptions, the
parties filed summary judgment motions and responses that did not themselves state
any grounds, but that instead incorporated by reference equivalent motions or
responses from the first Texas suit or from their or other parties’ summary judgment
motions or responses in the second Texas suit. Normally, summary judgment
grounds must be stated in the motion itself, not in an attached brief or evidence, and
no special exception would be required to preserve an appellate complaint about a
total lack of grounds in the motion. See McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 342 (Tex. 1993). However, all parties used the incorporation-by-reference procedure below without objection, and, more importantly, no party
complains on appeal of any other party’s use of the incorporation-by-reference
procedure. See Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993) (holding that
appellate court cannot reverse judgment for reason not raised in point of error).
          Emmes moved for rule-166a(c) summary judgment on the ground that
appellants had waived their rights under Property Code section 51.005 (fair-market-value determination) by express waiver in the guaranty. The Fogartys’ summary
judgment response claimed that the guaranty’s waiver of a fair-market-value
determination and an offset under section 51.005 (1) violated Texas’s public policy
and (2) was invalid because the rights that it waived did not exist when the waiver
was signed.


 The Fogartys’ response expressly stated that the “issue presented is
whether a guarantor’s waiver of his right to determination of the fair market value . . .
pursuant to Tex. Prop. Code. Ann. § 51.005 (Vernon 1995) is enforceable.” The
Fogartys admitted in their response that their claim was for a determination “pursuant
to Tex. Prop. Code Ann. § 51.005.” The Segals also responded to Emmes’s
summary judgment motion about the same time,


 arguing that the guaranty’s waiver
of a fair-market-value determination and an offset under section 51.005 (1) was void
for violating Texas’s public policy, (2) was ambiguous, and (3) was unenforceable
for not being conspicuous.



          The trial court did not rule on Emmes’s summary judgment motion at the
scheduled hearing, but instead allowed appellants additional time to file their own
rule 166a(c) summary judgment motions. Thereafter, the Fogartys amended their
petition, seeking the following, alternative declarations:
1.A declaration that New York law (specifically, a deficiency-law
defensive bar) precluded a deficiency judgment and required that
the properties’ sale price be deemed in full satisfaction of the
debt.
 
2.A declaration of the properties’ fair-market value and of any
offset to which the Fogartys were entitled from a deficiency
judgment.

          On the same day that they amended their petition, the Fogartys moved for
partial summary judgment on the ground that the note, deed of trust, and guaranty
provided that New York law applied to any deficiency action; that Emmes did not
comply with New York deficiency law; and that Emmes was thus barred entirely from
seeking any deficiency judgment. They also moved for summary judgment on the
ground that the foreclosure sales of some of the properties were void under Texas law
for allegedly having taken place in the wrong county. The Segals later moved for
summary judgment on essentially the same grounds as had the Fogartys, the only
substantive difference being that the Segals’ motion asserted that the two foreclosure
sales were either void or voidable.



          Emmes responded to appellants’ summary judgment motions by arguing that
(1) Texas law, not New York law, applied to any deficiency action; (2) alternatively,
even if New York deficiency law applied, appellants had waived any protections
under New York deficiency law through a waiver in the agreed bankruptcy order; and
(3) the foreclosure sales for all three properties were properly held in Harris County.



          The trial court granted Emmes’ summary judgment motion and denied
appellants’ summary judgment motions without specifying grounds, effectively
overruling appellants’ challenges to the deficiency remaining after the non-judicial
foreclosure sale.
III. Appellants’ Challenges to the Deficiency Judgment
A.      Appellants’ Challenges Under New York Deficiency Law to Emmes’s
Seeking Any Deficiency Judgment

          In the Fogartys’ first issue and the Segals’ first and second issues, appellants
claim that the trial court erred in rendering summary judgment for Emmes, denying
the Fogartys’ motion for partial summary judgment, and denying the Segals’ motion
for summary judgment


 because (1) New York deficiency law applied, (2) Emmes did
not comply with New York deficiency law because Emmes did not move to confirm
the foreclosure sales timely,


 and (3) Emmes was thus barred from seeking any
deficiency judgment at all.
          One of the arguments that Emmes raised in its summary judgment response
below was that, even if New York deficiency law applied, appellants had waived any
defensive use of that law by their concessions in the agreed bankruptcy order.


 
Emmes again raises that argument in its appellee’s brief. That agreed order provided
in pertinent part that all four individual appellants “acknowledge validity of the
judgment [against them as guarantors] entered in New York and waive any defenses
they have to its enforcement after December 3, 1999.” (Emphasis added.) Neither
in their opening briefs nor in their rehearing motions on appeal do appellants reply
to the merits of Emmes’s waiver-by-agreed-bankruptcy-order argument, and they
likewise did not reply to the argument below.



 
          The agreed bankruptcy order was signed by the borrower, Emmes, and the four
appellants. The order provided:
If the foregoing provisions [relating to the borrower] are complied with
in full, Emmes will forebear from pursuing collection activities under
the judgment granted to Emmes against Richard Segal and Joseph
Fogarty and their wives until December 3, 1999. The appeal filed by
Mr. and Mrs. Segal and Mr. and Mrs. Fogarty in the New York action
based on their guaranties on the Note, as well as the motion filed in
Texas challenging the domestication of the judgment on the Note and
the motion seeking to stay the enforcement of the judgment on the Note
shall be withdrawn within 10 days after this Order is entered. Mr. and
Mrs. Fogarty and Mr. and Mrs. Segal acknowledge validity of the
judgment entered in New York and waive any defenses they have to its
enforcement after December 3, 1999.

(Emphasis added.) The “judgment” to which the quoted provision refers is actually
two judgments—those rendered in New York against the Segals and the Fogartys
based on the guaranty.
          Appellants’ guaranty, in turn, provided:
This guaranty is and shall be construed to be an absolute, continuing,
unconditional and unlimited guaranty of payment. [Emmes] shall have
the right to proceed against [appellants] or any one of them immediately
upon any default hereunder and shall not be required to take any action
or proceeding of any kind against the Borrower or any other party liable
for the Borrower’s debts or any security which [Emmes] may hold,
either under this guaranty, or otherwise, before proceeding against
[appellants] or any one of them hereunder and [Emmes] shall have the
right to proceed against all or any portion of any collateral held by
[Emmes] as security for any debt of Borrower or under thus guaranty
and in such order or manner as [Emmes], in its sole discretion, shall
determine . . . .

          In the agreed bankruptcy order, appellants expressly acknowledged the validity
of the judgments rendered against them based upon the unconditional guaranty
quoted above, and they waived “any defenses” that they had to the judgments’
enforcement. The question is whether appellants’ acknowledgment and waiver in the
agreed bankruptcy order precluded them from using New York deficiency law as a
bar to Emmes’s enforcing a deficiency judgment against them as guarantors. Because
the agreed bankruptcy order waived “any defenses” to the guaranty’s enforcement,
we must determine whether the New York deficiency law’s bar falls within the
meaning of “any defense.” We conclude that it does.
          New York deficiency law places the burden on the creditor to seek a deficiency
judgment within 90 days after the foreclosure sale on mortgaged property; if the
creditor does not do so, it is barred from seeking a deficiency judgment at all. N.Y.
Real Prop. Acts § 1371(3). The New York courts have likened the section 1371(3)
bar to a statute of limitations, which must be timely raised by the debtor as a defense
when the creditor seeks a deficiency. See Bianco v. Coles, 520 N.Y.S.2d 261, 262
(App. Div. 1987); Voss v. Multifilm Corp. of Am., 491 N.Y.S.2d 434, 435 (App. Div.
1985); Amsterdam Sav. Bank v. Amsterdam Pharmaceutical Dev. Corp., 484
N.Y.S.2d 217, 218 (App. Div. 1984); Mortgagee Affiliates, Inc. v. Jerder Realty
Corp., 406 N.Y.S.2d 326, 327 (App. Div. 1978), aff’d, 391 N.E.2d 1011 (N.Y. 1979). 
Section 1371(3) is thus a procedural defense, not a jurisdictional bar, contrary to the
Segals’ implication in their opening brief. See Voss, 491 N.Y.S.2d at 435; Mortgagee
Affiliates, Inc., 406 N.Y.S.2d at 327. Appellants’ use of the section 1371(3) bar is
thus defensive, even when asserted in a Texas deficiency proceeding by those
designated as plaintiffs. Therefore, we hold that, even if New York deficiency law
applied, appellants waived any use of that law’s section 1371(3) defensive bar by
entering into the agreed bankruptcy order.


 We thus further hold that the trial court
did not err in rejecting the defensive New-York-deficiency-law grounds in appellants’
summary judgment motions and in determining that appellants’ arguments based on
those same grounds did not preclude summary judgment for Emmes.



          We overrule the Fogartys’ first issue and the Segals’ first and second issues.
B.      Appellants’ Challenges to Their Contractual Waiver of Rights Under
Texas Deficiency Law

          The guaranty, signed by each appellant as guarantor, contained the following
waiver, which is italicized:
14.The [Segals and Fogartys] hereby releases, discharges and
acquits forever [Emmes] and its officers, directors, trustees, agents,
employees and counsel (in each case, past, present or future) from any
and all Claims existing as of the date hereof (or the date of actual
execution hereof by [the Segals and Fogartys], if later. As used herein,
the term “Claim” shall mean any and all liabilities, claims, defenses,
demands, actions, causes of action, judgments, deficiencies, interest,
liens, costs or expenses . . . of any kind and character whatsoever, . . . in
each case whether now known or unknown, suspected or unsuspected,
asserted or unasserted or primary or contingent, and whether arising out
of written documents, unwritten undertakings, course of conduct, tort,
violations of laws or regulations or otherwise. To the maximum extent
permitted by applicable law, [appellants] hereby waive[s] all rights,
remedies, claims and defenses based upon or related to Sections 51.003,
51.004 and 51.005 of the Texas Property Code, to the extent the same
pertain or may pertain to any enforcement of this Guaranty.

(Italics added; underlining in original.)


 Property Code Section 51.005 allows a
guarantor to challenge the fair-market value of property sold in a non-judicial
foreclosure sale as a prelude to seeking an offset from the deficiency amount. See
Tex. Prop. Code Ann. § 51.005(b), (c) (Vernon 1995).


 It is under section
51.005—the rights of which appellants’ expressly waived in the guaranty—that
appellants sued and counterclaimed against Emmes in both Texas suits.
          By separate issues, appellants claim that the section 51.005 waiver in the
guaranty was either unenforceable or void for various reasons or that material fact
issues precluded summary judgment.
 
          1.       Public Policy
          In their fifth issue, the Segals claim that the guaranty’s waiver is void for
violating Texas public policy. In part of their third issue, the Fogartys claim that the
guaranty’s waiver (and the deed of trust’s parallel waiver) is unenforceable for
violating Texas public policy.
          Property Code section 51.005(b)’s purpose is to prevent mortgagees from
recovering more than their due at the guarantor’s expense. See Long v. NCNB-Texas
Nat’l Bank, 882 S.W.2d 861, 865 (Tex. App.—Corpus Christi 1994, no writ) (noting
that section 51.005 was designed to protect guarantors in deficiency suits arising out
of non-judicial foreclosures on realty). That purpose does not necessarily translate
into a policy so fundamental to Texas jurisprudence that it cannot be waived
contractually. Appellants cite no case so holding.



          Another section of Property Code chapter 51 implies that appellants are
incorrect. In 1987, the Legislature amended Property Code section 51.002 to add
subsection (d):
Notwithstanding any agreement to the contrary, the holder of the debt
shall serve a debtor in default under a deed of trust or other contract lien
on real property used as the debtor’s residence with written notice by
certified mail stating that the debtor is in default under the deed of trust
or contract. The debtor must be given at least 21 days to cure the default
before the entire debt is due and notice of sale is given.

Act of May 19, 1987, 70th Leg., R.S., ch. 540, § 1, 1987 Tex. Gen. Laws 2174, 2174
(appearing at Tex. Prop. Code Ann. § 51.002(d) (Vernon 1995)) (emphasis added),
amended by Act of April 15, 1993, 73rd Leg., R.S., ch. 48, § 5, 1993 Tex. Gen. Laws
97, 99. The accompanying bill analysis indicates that the Legislature added
subsection (d) to clarify that a residential debtor’s right to notice and to cure could
not be waived by agreement. House Comm. on Bus. & Comm., Bill Analysis, Tex.
H.B. 1504, 70th Leg., R.S. (1987). The Legislature thus knew how to grant a non-waivable right in chapter 51, but chose not to do so in sections 51.003 or 51.005, the
provisions granting valuation and offset rights to debtors and guarantors. The
omission of such language in section 51.005 thus implies that the rights that it confers
are not so fundamental that they cannot be waived.
          Likewise, provisions of the Texas Property Code outside chapter 51 imply that
section 51.005’s valuation and offset rights can be waived contractually. In at least
11 other instances within the Property Code, the Legislature has expressly stated that
waivers of given rights, obligations, liabilities, exemptions, etc. are void or voidable,
either categorically or under certain conditions.


 That prohibitive language appears
nowhere in sections 51.003 or 51.005. This omission indicates strongly that the
Legislature did not find the protections afforded in section 51.005 to be so
fundamental that they could not be waived contractually. See LaSalle Bank Nat’l
Ass’n v. Sleutel, 289 F.3d 837, 841-42 (5th Cir. 2002) (applying same reasoning to
hold that guarantor could validly waive any offset rights under Texas Property Code
section 51.003).
          Furthermore, this Court’s decision in Chase Manhattan Bank, N.A. v.
Greenbriar North Section II provides analogous support for our conclusion. See id.,
835 S.W.2d 720 (Tex. App.—Houston [1st Dist.] 1992, no writ). In Chase
Manhattan, we recognized that the New York and Texas deficiency laws were
materially different and that New York’s requirement that a creditor confirm a sale
within 90 days was “not merely ‘procedural,’” but was instead an integral part of the
creditor’s deficiency claim. Id. at 726-27. The application of New York deficiency
law would have deprived the creditor in Chase Manhattan of any deficiency rights. 
Id. Nonetheless, as part of a choice-of-law analysis, we held that “no ‘fundamental
policy’ of Texas” was implicated or offended by applying the materially different
New York deficiency law that would, or could, effectively result in the creditor’s total
loss of any deficiency rights. Id. If it did not offend the fundamental policy of Texas
to apply a foreign law, as the parties had contracted to do, that would effectively
destroy one party’s deficiency rights because that party had not complied with that
law, then, by analogy, it does not offend the fundamental policy of Texas for a party
knowingly to waive its right to challenge the foreclosure sale price in a deficiency
suit. Cf. id.
          We distinguish SBKC Service Corp. v. 1111 Prospect Partners, on which the
Segals appear to rely for the proposition that a debtor cannot prospectively waive his
deficiency-related rights.


 See id., 1998 WL 436579 (10th Cir. July 30, 1998) (not
designated for publication). First, the SBKC Service court’s holding did not concern
whether a debtor could prospectively waive these rights, but instead concerned
whether California or Kansas law applied to the deficiency suit. See id. at * 6. It was
only in dictum that the court noted that California’s anti-deficiency statute barred
such a prospective waiver. See id. at * 4. Second, the California anti-deficiency
statute considered in SBKC Service differs materially from the deficiency statute of
Texas: the California statute bars deficiency judgments entirely after a non-judicial
foreclosure sale,


 whereas the Texas statute allows a creditor to seek a deficiency
judgment after a non-judicial foreclosure sale, subject to the debtor’s or guarantor’s
right to seek a valuation of the property and an offset.


 This statutory difference
prevents SBKC Service’s dictum from applying here. See LaSalle Bank Nat’l Ass’n,
289 F.3d at 841 (in holding that Texas law allowed guarantor contractually to waive
right to offset from deficiency judgment, finding important the fact that Texas’s
deficiency statutes do not preclude deficiency judgments after non-judicial
foreclosure sales, but instead allow liable party to seek offset; noting that other states’
anti-deficiency statutes, in contrast, precluded deficiency judgments altogether after
non-judicial foreclosure sales).
          By separate argument under another issue in their brief,


 the Segals claim that
contractual clauses waiving procedural or substantive rights must limit the waiver to
a reasonable time. The Segals assert that the guaranty’s valuation-and-offset waiver
is such a clause and that it fails this requirement. The Segals rely on Duncan v.
Lisenby for this proposition, but that opinion does not support them. Duncan
concerned only a prospective agreement to waive the defense of limitations: “A
general agreement in advance to waive or not to plead the statute of limitations on a
particular obligation is void as against public policy. The agreement must be specific
and for a predetermined length of time.” Id., 912 S.W.2d 857, 858-59 (Tex.
App.—Houston [14th Dist.] 1995, no writ). Duncan did not concern the waiver of
a substantive right, but the waiver of a procedural bar. 
          This is an important distinction. A limitations bar differs materially from a
debtor’s or guarantor’s rights to valuation and offset under chapter 51. Limitations
is the Legislature’s procedural device for establishing a point of repose for past
actions and for “ensur[ing] that the search for truth is not impaired by stale evidence
or the loss of evidence.” Childs v. Haussecker, 974 S.W.2d 31, 38-39 (Tex. 1998);
accord Stewart Title Guar. Co. v. Hadnot, 101 S.W.3d 642, 644 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied). Because one waiving a limitations bar
is effectively expanding the time that the Legislature has allowed for suit, it is logical
to require the waiving party to confine that waiver to a reasonable amount of time,
rather than to waive the bar altogether. In contrast, a guarantor’s valuation and offset
rights under chapter 51 are substantive rights, not procedural bars to suit. Those
substantive rights do not spring into existence until the creditor seeks a deficiency
judgment—an event necessarily occurring after the guarantor waives those rights in
the underlying guaranty contract. There is thus no continuing period, such as the time
in which to file suit, that the guarantor is extending by its contractual waiver. 
Accordingly, Duncan’s holding does not apply.
          We overrule the Segals’ fifth issue and this part of the Fogartys’ third issue.
          2.       Waiver of a Right Not Yet in Existence

          In the remainder of their third issue, the Fogartys claim that the guaranty’s
waiver (and the deed of trust’s parallel waiver) is unenforceable because the right
waived—the right to seek a fair-market-value determination—did not exist when the
waiver was signed.
          The cases on which the Fogartys rely are distinguishable because they
generally concern waiver by action or inaction, i.e., implied waiver, not express or
contractual waiver. See Cent. Am. Life Ins. Co. v. Krause, 284 S.W.2d 192, 193-94
(Tex. Civ. App.—Amarillo 1955, no writ) (considering whether insurer, by drawing
premium, waived forfeiture of policy); Faubian v. Busch, 240 S.W.2d 361, 365-66
(Tex. Civ. App.—Amarillo 1952, writ ref’d n.r.e.) (considering waiver of right to
enforce deed restrictions by action or inaction). To waive a right impliedly, by acting
inconsistently with it or by not acting at all, the right must be assertable at the time
that the right is waived. Not so with a right expressly and knowingly waived by
contract. Unless a statute or fundamental public policy precludes waiver (and we
have held that it does not), one may generally waive even constitutional or statutory
rights, present or future, by contract. See Williams v. Williams, 569 S.W.2d 867, 869-70 (Tex. 1978) (holding that surviving spouse could contractually waive statutory and
constitutional homestead rights); Dillee v. Sisters of Charity of Incarnate Word
Health Care Sys., 912 S.W.2d 307, 308-09, 311 (Tex. App.—Houston [14th Dist.]
1995, no writ) (holding that employee could contractually waive contract and
constitutional right to due process and hearing upon termination of employment);
Beago v. Ceres, 619 S.W.2d 293, 295 (Tex. Civ. App.—Houston [1st Dist.] 1981, no
writ) (noting that joint owner may contractually waive absolute, statutory right to
partition real property).
          We overrule the remainder of the Fogartys’ third issue.



          3.       Ambiguity and Conspicuousness
          In their fourth issue, the Segals claim that the guaranty’s waiver (and the deed
of trust’s parallel waiver) was unenforceable for being ambiguous and inconspicuous.
                    a.       Ambiguity
          A court’s primary duty in construing a contract is to ascertain the drafter’s
intent from the instrument’s language. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983). In ascertaining the drafter’s intent, we must examine the contract as a whole
and strive to give every part of the contract effect. Id.; Forbau v. Aetna Life Ins. Co.,
876 S.W.2d 132, 133 (Tex. 1994).
          Whether a contract is ambiguous is a matter of law for the court to decide. 
Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex.
1996). A contract is unambiguous if, after appropriate rules of construction have
been applied, the contract can be given a definite or certain legal meaning. See id.;
Pitman v. Lightfoot, 937 S.W.2d 496, 517 (Tex. App.—San Antonio 1996, writ
denied). In contrast, if, after appropriate rules of construction have been applied, a
contract is susceptible of more than one reasonable interpretation, the contract is
ambiguous. Universal C. I. T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex.
1951). Mere disagreement over a contract’s interpretation does not necessarily render
the contract ambiguous. Columbia Gas, 940 S.W.2d at 589.
          The Segals argue that the guaranty’s paragraph 14, which contains both a
release and the waiver provision on which Emmes relies, is ambiguous when read in
its entirety. Specifically, the Segals claim that an earlier recitation in paragraph
14—that appellants released Emmes from claims “existing as of the date [of the
guaranty]”—rendered ambiguous the paragraph’s later waiver of appellant’s Property
Code rights, which waiver did not specify when the waived rights accrued. We
disagree.
          Paragraph 14 was clearly divided into two parts. The first part (two sentences)
of paragraph 14 released Emmes from claims that existed as of the date of the
guaranty’s signing:
[Appellants] hereby releases, discharges and acquits forever [Emmes]
and its officers, directors, trustees, agents, employees and counsel . . .
from any and all Claims existing as of the date hereof (or the date of
actual execution hereof by [appellants], if later). . . .

Those two initial sentences functioned as a backwards-looking release from
previously or simultaneously incurred liability. 
          In contrast, the second part (one sentence) of paragraph 14 was necessarily a
waiver of future rights and defenses because that sentence waived only those rights
and defenses that “pertain[ed] or may pertain to any enforcement of this Guaranty”:
To the maximum extent permitted by applicable law, [appellants] hereby
waives all rights, remedies, claims and defenses based upon or related
to Sections 51.003, 5.004 and 51.005 of the Texas Property Code, to the
extent the same pertain or may pertain to any enforcement of this
Guaranty.
The enforcement of a guaranty necessarily post-dates the making of the guaranty
because enforcement comes only after the borrower’s default on the note that the
guaranty supports. The parties thus clearly intended paragraph 14’s “waiver” section
to be separate from its “release” section and for the paragraph’s two sections to
concern claims or defenses arising at different points in time. There was thus no
ambiguity in paragraph 14, and the trial court did not err in implicitly determining as
much.
          We overrule this portion of the Segals’ fourth issue.
                    b.       Conspicuousness
          In the remainder of their fourth issue, the Segals argue that the waiver in
paragraph 14 of the guaranty is unenforceable because it was not conspicuous.
          The Segals cite no authority holding that a waiver such as this must be
conspicuous. Rather, they rely on a line of authority holding that indemnity
agreements and agreements to release another in advance from liability for the other’s
negligence must be conspicuous. See Littlefield v. Schaefer, 955 S.W.2d 272, 273
(Tex. 1997).


 We have serious doubts about whether this line of authority applies
here, however.
          The waiver in paragraph 14 is not a release of liability for Emmes’s future
negligence. A release of future liability is a contractual arrangement in which one
party assumes the liability inherent in a situation and thereby surrenders legal rights
or obligations. See Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508
(Tex. 1993). Such a release thus operates to extinguish a claim or defense as
effectively as would a prior judgment and is an absolute bar to any right of action on
the released matter. Id. Although most contractual provisions operate to transfer risk,
a contractual release that frees a party in advance from liability for its own negligence
represents an “extraordinary shifting of risk,” so much so that the risk-shifting
provision must be conspicuous, among other things. See id.
          By paragraph 14’s waiver, the Segals surrendered the right to a fair-market-value determination and an offset if Emmes sought a deficiency judgment. The
Segals claim that, by barring their assertion of these rights, the waiver effectively
shifted to them “the risk of loss attributable to real estate market nuances.” However,
the shifting of that risk is not necessarily so extraordinary that the waiver had to be
conspicuous. Most contractual provisions shift risk, but only those provisions that
represent an extraordinary shifting of risk must be conspicuous. See id. Moreover,
the waiver does not expressly release Emmes from its future acts, and the reasons for
which Emmes might seek a deficiency judgment are not necessarily limited to
Emmes’s conduct in holding the sale, i.e., the reasons could include a poor market or
low bidding on the day of sale, for example. We thus find this waiver sufficiently
different from those considered in the line of authority on which the Segals rely that
we are not convinced of the application of the Segals’ authority. Compare Green
Int’l, Inc. v. Solis, 951 S.W.2d 384, 387 (Tex. 1997) (holding that clause providing
that contractor would not be liable to subcontractor for delay in subcontractor’s work
caused by anyone, including contractor—which clause thus effectively made
subcontractor bear risk of untimely completion, even if contractor caused delay—was
not type of extraordinary risk-shifting clause subject to conspicuousness requirement)
with Dresser, 853 S.W.2d at 507 (applying conspicuousness requirement to release
and hold-harmless agreement) and Lawrence v. CDB Servs., Inc., 44 S.W.3d 544,
553-54 (Tex. 2001) (applying conspicuousness requirement to employee’s written
waiver of right to sue for injury, illness, or death arising at work due to employer’s
negligence or “actionable conduct”).
          But even if the conspicuousness requirement applied to this type of waiver, we
would hold that paragraph 14’s waiver was sufficiently conspicuous. Whether a
release is conspicuous is a question of law. Dresser, 853 S.W.2d at 509. For a
release to be conspicuous, something must appear on the contract’s face to attract the
attention of a reasonable person against whom it is to operate. Id. at 508, 511. “For
example, language in capital headings, language in contrasting type or color, and
language in an extremely short document, such as a telegram, is conspicuous.” Id.
at 511.
          Paragraph 14 contained only two provisions: (1) a release of past liability (first
two sentences)


 and (2) the waiver attacked in this appeal (last sentence). The
paragraph was the final contractual provision and appeared immediately above the
signature lines. Most importantly, however, the Property Code sections that were
being waived were underlined, a significant fact that the Segals fail to mention in
their brief. Under these circumstances, the trial court would not have erred if it
concluded that a reasonable person’s attention would have been drawn to this
waiver.


 We thus hold that, if the conspicuousness requirement applied, it was met.
          We overrule the remainder of the Segals’ fourth issue.
          4.       Fair-market value
          In their third issue, the Segals argue that genuine issues of material fact about
the three properties’ fair-market values precluded summary judgment for Emmes.



          We have already held that the guaranty’s waiver clause is not invalid or
unenforceable for the reasons that the Segals have argued. Because the Segals validly
waived their rights to seek a fair-market-value determination and an offset, it is
immaterial whether the Segals raised a fact issue on the three properties’ fair-market
value.
          We thus overrule the Segals’ third issue.
 
 
IV. Appellants’ Challenges to the Non-Judicial Foreclosure Procedure
Used by the Trustee




          The first property (“tract 1”) encumbered under the deed of trust is located in
Harris County. The second property (“tract 2”) is located in Polk County. The third
property, consisting of two separate pieces of land, is located in Harris County (“tract
3a”) and in Montgomery County (“tract 3b”). None of the specifically described
properties overlapped into an adjoining county. It is undisputed that the trustee
posted notices in the properties’ three respective counties that the sales would take
place in Harris County.


 It is further undisputed that the trustee conducted the sales
of all properties solely at the Harris County courthouse. 
          In their sixth issue and on rehearing, the Segals claim that the trial court erred
in granting Emmes’s motion for summary judgment, and in denying their own motion
for summary judgment, because the foreclosure sales of tracts 2 and 3b were either
void or voidable for having been held in Harris County, rather than in the counties in
which those two tracts were located. The Segals claim that the sales’ location
“chilled” the bidding process for tracts 2 and 3b, resulting in what they allege was an
inadequate sale price for the two tracts. The Fogartys raise similar challenges in their
second issue and on rehearing, although they claim that the sales of tracts 2 and 3b
were void. All parties agree that Texas law applied to the foreclosure sales.



A.      The Parties’ Interpretations of the Texas Foreclosure Statute
          The controlling statute reads as follows:
A sale of real property under a power of sale conferred by a deed of
trust or other contract lien . . . must take place at the county courthouse
in the county in which the land is located, or if the property is located
in more than one county, the sale may be made at the courthouse in any
county in which the property is located.

Tex. Prop. Code Ann. § 51.002(a) (Vernon 1995) (emphasis added). Section 6.4 of
the deed of trust contained a similar requirement.



          Appellants construe the statute’s “the land” and “the property” to mean only
one piece of property, regardless of how many pieces of property the deed of trust
covers. Under their construction, the trustee may select in which of multiple counties
to sell a single piece of property held under a deed of trust only when that one piece
of property lies in more than one county, i.e., only if the same piece of property
crosses the boundary between or among counties. If, however, the deed of trust
covers several, non-contiguous pieces of property, each of which lies in only one
county, and none of which lies in the same county, then the trustee must sell each
piece of property in the county in which it lies. The trustee’s foreclosure sale did not
comply with appellants’ interpretation of the statute. 
          In contrast, Emmes construes the statute’s “the land” and “the property” to
mean all property covered by the same deed of trust. Under Emmes’s construction,
if the deed of trust covers several, non-contiguous pieces of property, each of which
lies in only one county, and none of which lies in the same county, the trustee may
sell all pieces of property in any of the counties in which any piece of property lies. 
The trustee’s foreclosure sale complied with Emmes’s interpretation of the statute.
B.      Discussion
          Statutory interpretation is a question of law. In re Canales, 52 S.W.3d 698,
701 (Tex. 2001). Our primary goal in interpreting a statute is to ascertain and to
effectuate the Legislature’s intent. Id. In doing so, we begin with the statute’s plain
language before resorting to rules of construction. Helena Chem. Co. v. Wilkins, 47
S.W.3d 486, 493 (Tex. 2001); Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996
S.W.2d 864, 865-66 (Tex. 1999). We begin with the plain language because we
assume that the Legislature tried to say what it meant; therefore, the statute’s words
should be the surest guide to the Legislature’s intent. Fitzgerald, 996 S.W.2d at 866. 
In ascertaining legislative intent, we do not confine our review to isolated statutory
words, phrases, or clauses, but we instead examine the entire act. Meritor Auto., Inc.
v. Ruan Leasing Co., 44 S.W.3d 86, 90 (Tex. 2001); see Tex. Gov’t Code Ann. §
311.011 (Vernon 1998) (instructing courts to construe words and phrases in context).
          1.       The Plain Language of Property Code Section 51.002(a) is
Ambiguous

          In interpreting section 51.002(a), we start with its plain language. See Wilkins,
47 S.W.3d at 493. Only if we find that section 51.002(a)’s plain language is
susceptible of two or more reasonable interpretations will we hold that the statute is
ambiguous. See In re MO Pac. R.R. Co., 998 S.W.2d 212, 217 (Tex. 1999).
          Supporting Emmes’s interpretation is the following logic based on the statute’s
plain language:
●The words “real property,” “land,” and “property” can be
synonyms.



 
●Accordingly, the use of the definite article “the” before “land”
and “property” means simply that those two terms refer back to
the earlier, synonymous term “real property” in the statute’s
initial phrase.
 
●The context of “real property” in the initial phrase indicates that
“real property” can represent one or multiple tracts, as long as all
are encumbered under one deed of trust.
 
●Therefore, the term “the property,” as with the earlier,
synonymous term “real property,” can mean any number of
tracts—even non-contiguous tracts lying in different
counties—together comprising the “real property” encumbered
under the deed of trust. 
          Supporting appellants’ interpretation is the following logic based on the
statute’s plain language:
●The context of “real property” in the initial phrase indicates that
“real property” can represent one or multiple tracts.
 
●Similarly, “land” can represent one or multiple tracts.



 
●“Property,” however, is a singular noun, and its plural is
“properties.”



 
●Section 51.002(a) uses only the singular form “property,” the
singularness of which is emphasized by the use of the definite
article “the.”
 
●Therefore, the use of “the property” is not simply referring back
to any and all tracts encumbered under a deed of trust and
subsumed by the earlier terms “real property” and “land,” but
instead means only one tract that crosses county lines.

          The remainder of section 51.002 does not greatly clarify section 51.002(a)’s
language, although the use of “the sale” throughout the section seems to recognize
that only one sale need take place for each deed of trust, regardless of the number or
location of tracts of land encumbered under it (Emmes’s interpretation). See Tex.
Gov’t Code Ann. § 311.011. Neither does the remainder of Property Code chapter
51 shed light on which party’s construction of the statute is correct.
          We hold that section 51.002(a)’s plain language can reasonably support either
party’s interpretation. Accordingly, we hold that the statute’s plain language is
ambiguous. See In re MO Pac. R.R. Co., 998 S.W.2d at 217. 
          2.       The Code Construction Act’s Factors Do Not Resolve the Ambiguity

          The Code Construction Act lists factors that a court may consider in construing
a statute, whether or not the statute is ambiguous on its face. Tex. Gov’t Code Ann.
§ 311.023 (Vernon 1998). When construing a statute, we may consider, among other
things, (1) the statute’s objectives; (2) the circumstances under which the statute was
enacted; (3) the statute’s legislative history; (4) common law, former law, and similar
provisions; (5) the consequences of the statutory construction; (6) administrative
agencies’ construction of the statute; and (7) the title, preamble, and any emergency
provisions. Id. at § 311.023(1)-(7); Canales, 52 S.W.3d at 702. We presume that the
Legislature intended a just and reasonable result and favored public over private
interests. Tex. Gov’t Code Ann. § 311.021(3), (5) (Vernon 1998); Wilkins, 47
S.W.3d at 493. None of the above construction aids resolves the ambiguity of section
51.002(a)’s plain language.
                    a.       Section 51.002(a)’s objectives and the consequences of the
parties’ constructions

          The Texas Supreme Court has recognized that the evil that the Legislature
sought to remedy by enacting the original 1889 statute


 was oppressive and unfair
foreclosure provisions, including those allowing sales in counties other than those in
which the land lay because of the potential chilling effect on bidding, in private deed
or lien contracts. See Wylie v. Hays, 263 S.W. 563, 566-67 (Tex. 1924) (recognizing
same in holding that statute did not unconstitutionally impair contracts because
statute was reasonable exercise of power to protect public welfare);


 see also Tex.
Gov’t Code Ann. § 311.023(1) (allowing court to consider statute’s objective). 
Although the statutory purposes recognized in Wylie support appellants’
interpretation, the Wylie Court was not considering situations in which the land
encumbered under a deed of trust lay in more than one county. Id., 263 S.W. at 564;
see Bateman v. Carter-Jones Drilling Co., 290 S.W.2d 366, 370 (Tex. Civ.
App.—Texarkana 1956, writ ref’d n.r.e.) (holding that Wylie did not apply to
foreclosure sale, under deed of trust, of non-contiguous tracts of land located in
different counties). 
          In fact, there are beneficial and detrimental consequences to both parties’
interpretations. See Tex. Gov’t Code Ann. § 311.023(5) (allowing court to consider
consequences of particular construction). On the one hand, Emmes’s interpretation
would facilitate and perhaps lessen the costs of foreclosure sales in an age when great
distances are easily traversed,


 and when sophisticated parties (as here) encumber
several non-contiguous tracts of land under a single deed of trust, but would still give
notice of the sale’s location in each county involved. On the other hand, as the Segals
argue, appellants’ interpretation might ensure no chilling effect on bidding from
selling a tract of land somewhere potentially far away. Accordingly, we cannot say
that considering these consequences necessarily clarifies the ambiguity.
          The Segals also urge for the first time on rehearing that Emmes’s interpretation
of the statute, which would allow the trustee to choose in which county to sell the
encumbered property under the circumstances present here, would necessarily require
the trustee to breach its duties of impartiality and fairness by requiring the trustee to
promote either the debtor’s or the creditor’s interests, depending on where the
property is sold. We disagree. The choice of sale location is not necessarily a zero-sum game, with a clear winner and loser, for the reasons that we have discussed
above. We also note that the deed of trust here made the borrower (and thus
appellants) liable for all costs incurred upon default. When this type of contractual
provision exists, the trustee’s holding the sale of non-contiguous pieces of property
encumbered under one deed of trust in one county, rather than in several counties,
might relieve the debtor of some of the costs for which it could otherwise be liable. 
In any event, even Emmes’s interpretation of section 51.002(a) allows, but does not
require, the trustee to sell encumbered property that is located in more than one
county in only one of the counties in which the property is located. See Tex. Prop.
Code Ann. § 51.002(a) (providing that “if the property is located in more than one
county, the sale may be made at the courthouse in any county in which the property
is located.”) (emphasis added). That the trustee thus has flexibility under Emmes’s
interpretation concerning the place of sale lessens the likelihood that the Hobson’s
choice that appellants imagine would “inevitably” occur.
                    b.       The legislative history
          For the first time on rehearing, the Segals direct us to legislative history that
they claim supports their interpretation. See Tex. Gov’t Code Ann. § 311.023(3)
(allowing courts to consider legislative history).
 
          Immediately before its amendment in 1987, section 51.002 read in pertinent
part:
          (a)A sale of real property under a power of sale conferred by
a deed of trust or other contract lien must be a public sale at auction held
between 10 a.m. and 4 p.m. of the first Tuesday of a month. The sale
must take place in the county in which the land is located, or if the
property is located in more than one county, the sale may be made in any
county in which the property is located.
 
(b)Notice of the sale must be given at least 21 days before the
date of the sale:
 
(1)by posting at the courthouse door of each county in which
the property is located a written notice designating the county in which
the property will be sold; and

 
(2)by filing in the office of the county clerk of each county in
which the property is located a copy of the notice posted under
Subdivision (1); and
 
(3)by the holder of the debt to which the power of sale is
related serving written notice of the sale by certified mail on each debtor
who, according to the records of the holder of the debt, is obligated to
pay the debt. . . .

Act of May 26, 1983, 68th Leg., R.S., ch. 576, 1983 Tex. Gen. Laws 3475, 3525
(amended 1984, 1987) (current version at Tex. Prop. Code Ann. § 51.002(a), (b)
(Vernon 1995)). After its amendment in 1987, the statute read in pertinent part:
          (a)A sale of real property under a power of sale conferred by
a deed of trust or other contract lien must be a public sale at auction held
between 10 a.m. and 4 p.m. of the first Tuesday of a month. The sale
must take place at the county courthouse in the county in which the land
is located, or if the property is located in more than one county, the sale
may be made at the courthouse in any county in which the property is
located. The commissioners court shall designate the area at the
courthouse where the sales are to take place and shall record the
designation in the real property records of the county. If no area is
designated by the commissioners court, the notice of sale must designate
the area at the courthouse where the sale covered by that notice is to
take place, and the sale must occur in that area.
 
(b)Notice of the sale, which must include a statement of the
earliest time at which the sale will occur, must be given at least 21 days
before the date of the sale:
 
(1)by posting at the courthouse door of each county in which
the property is located a written notice designating the county in which
the property will be sold; and
 
(2)by filing in the office of the county clerk of each county in
which the property is located a copy of the notice posted under
Subdivision (1); and
 
(3)by the holder of the debt to which the power of sale is
related serving written notice of the sale by certified mail on each debtor
who, according to the records of the holder of the debt, is obligated to
pay the debt. . . .
(c)The sale must begin at the time stated in the notice of sale
or not later than three hours after that time. . . .

Act of May 19, 1987, 70th Leg., R.S., ch. 540, § 1, 1987 Tex. Gen. Laws 2174, 2174
(amended 1993) (current version at Tex. Prop. Code Ann. § 51.002(a)-(c) (Vernon
1995)) (emphasis shows text added by amendment).
 
            In support of their interpretation of section 51.002(a), the Segals rely on the
italicized portions of the House committee analysis for the bill underlying the 1987
amendment:
          PURPOSE
 
This bill seeks to address two problematic areas in present law: the
uncertain location and time of the auction, and the possibility that a
residential debtor’s right to cure may be subject to waiver in the deed of
trust.
 
SECTION BY SECTION ANALYSIS
 
Section 1 incorporates the amendments to section 51.002, Property
Code.
 
          Subsection (a) is amended to require that the public auction of
real property must be at the courthouse in the county where the land is
located. The commissioners’ court may designate the area at the
courthouse where all such auctions will take place; if no designation is
made, the notice of sale must specify the area.
 
Subsection (b) is amended to require that the notice of sale must
include the earliest time at which the sale may occur.
 
Subsection (e) is amended to require that the sale must occur at
the time recited in the notice, or not later than three hours after that time. 
. . .

House Comm. on Bus. & Comm., Bill Analysis, Tex. H.B. 1504, 70th Leg., R.S.
(1987) (emphasis added). The Segals claim that the italicized portion of the bill
analysis demonstrates an intent that the sale be held in each county in which a non-contiguous piece of land is located, not in one county in which any piece of land
covered by the deed of trust may lie. They focus on the final words in the bill
analysis’s statement that “[s]ubsection (a) is amended to require that the public
auction of real property must be at the courthouse in the county where the land is
located.” See id. (emphasis added). We disagree with the Segals’ focus and with
their conclusion.
          Even before the 1987 amendment, section 51.002(a) provided that the sale be
held “in the county in which the land was located.” See Act of May 26, 1983, 68th
Leg., R.S., ch. 576, 1983 Tex. Gen. Laws 3475, 3525 (amended 1987). The 1987
amendment carried forward this requirement without change. The referenced
statement in the 1987 bill analysis thus could not have concerned a change in the
county of sale. Rather, what the bill analysis explained, and what the 1987
amendment corrected, was confusion about the time and place of the sale within the
county of sale. As the bill analysis explains, the 1987 amendment solved that
problem by requiring that the sale be held in a particular portion of the courthouse
of the county of sale and at a specified time. See House Comm. on Bus. & Comm.,
Bill Analysis, Tex. H.B. 1504, 70th Leg., R.S. (1987). Because the focus of the
1987 Legislature was on the place and time of sale within the county of sale, rather
than on which county itself was the proper county of sale, the legislative history that
the Segals cite does not support their position or resolve the ambiguity concerning the
proper county of sale.
                    c.       The circumstances surrounding enactment (here, codification)

          The Segals next argue that the Legislature “specifically replaced the previous
foreclosure statute” by codifying section 51.002(a)’s immediate predecessor in 1983. 
Apparently recognizing that the fact of codification does not help their position if the
codified law did not substantively change its immediate predecessor,


 the Segals also
argue that codified section 51.002(a) substantively differed from its immediate
predecessor, former Revised Civil Statute article 3810.


 See 1925 Tex. Rev. Civ.
Stat. 1022-23 (amended 1983) (current version at Tex. Prop. Code Ann. §
51.002(a) (Vernon 1995)) [hereinafter “former article 3810”].
          Former article 3810 read as follows:
All sales of real estate made under powers conferred by any deed of
trust or other contract lien shall be made in the county in which such
real estate is situated. Where such real estate is situated in more than
one county then notices as herein provided shall be given in both or all
of such counties, and the real estate may be sold in either county, and
such notice shall designate the county where the real estate will be sold. 
Notice of such proposed sale shall be given by posting written notice
thereof at least 21 days preceding the date of the sale at the courthouse
door of the county in which the sale is to be made, and if the real estate
is in more than one county, one notice shall be posted at the courthouse
door of each county in which the real estate is situated.

Id. (emphasis added). Former article 3810’s language does not materially differ in
pertinent part from that of section 51.002(a) and does not show that the Legislature
intended to break from prior law in codifying section 51.002(a).
                    d.       The former law
          Appellants alternatively argue that, even if section 51.002(a) did not differ
materially from its immediate predecessor (former section 3810, enacted in 1925), an
earlier version of former article 3810, enacted in 1915, nonetheless did differ
materially. Appellants argue that the abandoned 1915 statutory version probably
supported Emmes’s interpretation, but that all subsequent statutory
versions—including section 51.002(a) and former article 3810—support appellants’
interpretation. Therefore, appellants argue that section 51.002(a) reflects the
Legislature’s long-standing decision (since 1925, with the enactment of former article
3810) to abandon the statutory interpretation that Emmes espouses.
          Since its adoption in 1889, with one exception, the Texas foreclosure statute
has generally required that sales of real estate under powers conferred by deed of trust
be made in the county in which the property lies, with the exception that, if the
property is located in more than one county, the sale may occur in any county in
which the property is located, as long as notice of the sale is given in each county in
which the property is located.


 Current section 51.002(a) falls into this category:
A sale of real property under a power of sale conferred by a deed of
trust or other contract lien . . . must take place at the county courthouse
in the county in which the land is located, or if the property is located
in more than one county, the sale may be made at the courthouse in any
county in which the property is located. . . .
Tex. Prop. Code Ann. § 51.002(a) (emphasis added).
          In 1915, however, the Legislature amended the statute, then former Revised
Civil Statute article 3759, to read as follows:
All sales of real estate made in this state under powers conferred by any
deed of trust or other contract lien shall be made in the county in which
such real estate is situated, unless such real estate be situated in more
than one county, in which event, notices as herein provided shall be
given in both or all of such counties, providing and giving notice that
such sale will be made of such real estate in that one of said counties in
which the greater portion of the real estate may be situated; if equal
quantities of said land to be sold lie in different counties, said notice
shall designate in which of said counties the sale is to be made.

See Act of March 10, 1915, 34th Leg., R.S., ch. 43, § 1, 1915 Tex. Gen. Laws 84
(amended 1915); Act of May 28, 1915, 34th Leg., 1st C.S., ch. 15, § 2, 1915 Tex.
Gen. Laws 32, 32-33 (amended 1925) (both appearing at former Tex. Rev. Civ. Stat.
art. 3759) (emphasis added) [hereinafter “former article 3759”].
          Appellants claim that former article 3759’s italicized language (1) differed
materially from the language used in all other versions the statute and (2) probably
did support Emmes’s position. Appellants then argue that, because former article
3759’s italicized language was abandoned in all subsequent statutory versions, the
Legislature intended to reject any meaning that might have supported Emmes’s
position about where land lying in multiple counties could be sold. We disagree.
          Former article 3759’s language did differ, but not in any way materially
affecting our consideration. Specifically, former article 3759 was ambiguous for the
same reasons that section 51.002(a) is ambiguous, and both statutory versions can
thus be read to support either appellants’ interpretation or Emmes’s interpretation
concerning county of sale. 
          For example, former article 3759 used the terms “real estate” and “land.” 
Section 51.002(a) uses the terms “real property,” “land,” and “property.” Each of
these terms used in either statute can be synonyms. See Random House Webster’s
Unabridged Dictionary 1079, 1550, 1607 (2nd ed. 1987). Additionally, the initial
use of the term “real estate” in former article 3759 could have referred to one or to
multiple pieces of property.


 See id. at 1607 (not distinguishing between singular
and plural forms of these terms). Similarly, as we have already discussed, section
51.002(a)’s initial use of “real property” indicates that “real property” can be singular
or plural, too. See Tex. Prop. Code Ann. §51.002(a).


 And, finally, as we have also
concluded concerning section 51.002(a), former article 3759’s subsequent uses of
“real estate” (and of “land”) did not clarify whether the statute was referring to one
piece of land that straddled two or more counties or to multiple pieces of land that
each lay in a separate county.


 See Act of March 10, 1915, 34th Leg., R.S., ch. 43,
§ 1, 1915 Tex. Gen. Laws 84 (amended 1915); Act of May 28, 1915, 34th Leg., 1st
C.S., ch. 15, § 2, 1915 Tex. Gen. Laws 32, 32-33 (amended 1925). Therefore, any
differences between former article 3759 and all other statutory versions (including
section 51.002(a)) are immaterial for purposes of our issue.
 
          Appellants rely heavily on former article 3759’s express provision allowing for
notice in multiple counties, but for sale in the one county in which the greater portion
of real estate lay. They note that section 51.002(a) does not itself contain a provision
allowing notice in several counties, but sale in one. However, sections 51.002(a) and
51.002(b), read together, do so provide: section 51.002(a) allows the sale “in any
county in which the property is located,” while section 51.002(b) requires notice in
“each county in which the property is located.” See Tex. Prop. Code Ann. §§
51.002(a), 51.002(b).
          Accordingly, we hold that the Legislature did not, by discontinuing the
wording of former article 3759, necessarily reject the interpretation of section
51.002(a) that Emmes espouses.
          3.       The Doctrine of Legislative Acceptance Resolves the Ambiguity
          When the Legislature re-enacts without material change an ambiguous statute
that has been given a long-standing judicial interpretation, we presume that the
Legislature intended the statute to have the meaning ascribed by the courts. See, e.g.,
Marmon v. Mustang Aviation, Inc., 430 S.W.2d 182, 187 (Tex. 1968); Cunningham
v. Cunningham, 40 S.W.2d 46, 50 (Tex. 1931); see also City of Austin v. S.W. Bell
Tel. Co., 92 S.W.3d 434, 445 (Tex. 2002) (same, concerning agency’s administrative
interpretation).
 
          The only case on point is Bateman v. Carter-Jones Drilling Co., which
supports Emmes’s interpretation of section 51.002(a).


 See id., 290 S.W.2d 366
(Tex. Civ. App.—Texarkana 1956, writ ref’d n.r.e.). The appellants in Bateman
argued that the sale of one single tract among five tracts of land encumbered under
a deed of trust, which single tract lay in Gregg County, was void for having taken
place in neighboring Rusk County, where the four other tracts of land encumbered
under the deed of trust were situated. Id. at 370. The Gregg County tract was not
contiguous with any of the Rusk County tracts. Id. at 369. Construing former article
3759 (the 1915 predecessor of section 51.002(a) discussed in the preceding section),
the Bateman court held that the sale of the Gregg County land in Rusk County was
valid. Id. at 370-71. The Bateman court reasoned as follows:
It is the contention of plaintiffs that such statute provides for the sale of
lands in a different county from that in which it is situated only in case
the land is contiguous to the tract or tracts of land in the county in which
the sale is held. Some states have so construed a similar statute. In view
of the broad language used in our statute, we do not believe that to be a
proper construction. Surely the Legislature, when they [sic] made the
provision for the sale of land where the greater portion thereof is
situated and if in equal quantities the notice shall designate in which of
said counties the sale is to be made, did not anticipate that land could be
situated in a half-dozen or more counties and likely to be contiguous,
one tract to the other, making a complete chain back to the county in
which the sale was to be held. 

Id. at 370.

          We have already held that former article 3759, which the Bateman court
construed, and current section 51.002(a) do not differ in any material way for
purposes of the issue under consideration. Compare Act of March 10, 1915, 34th
Leg., R.S., ch. 43, § 1, 1915 Tex. Gen. Laws 84 (amended 1915) (former Tex. Rev.
Civ. Stat. art. 3759, considered in Bateman) with Tex. Prop. Code Ann. §
51.002(a) (considered in this appeal). Since Bateman, the Legislature has amended
former article 3759, codified that amendment as section 51.002(a), and once amended
section 51.002(a). See 1925 Tex. Rev. Civ. Stat. 1022-23 (appearing at former Tex.
Rev. Civ. Stat. art. 3810) (amended 1983); Act of May 26, 1983, 68th Leg., R.S.,
ch. 576, 1983 Tex. Gen. Laws 3475, 3525 (amended 1987); Act of May 19, 1987,
70th Leg., R.S., ch. 540, § 1, 1987 Tex. Gen. Laws 2174, 2174 (adopting current
version of Tex. Prop. Code Ann. § 52.001(a)). As shown above, at no time was
section 51.002(a)’s language changed in a material way that would have defeated
Bateman’s relevant holding.


 We also note that, in addition to the 1987 amendment
to section 51.002(a) noted above, the Legislature has three times amended other
subsections of section 51.002 after Bateman, but in none of those instances did it alter
the language of subsection (a). See Act of July 3, 1984, 68th Leg., 2nd C.S., ch. 18,
§ 3(b), 1984 Tex. Gen. Laws 94, 95 (amended 1993) (amending section 51.002(b) and
adding section 51.002(d)); Act of April 15, 1993, 73rd Leg., R.S., ch. 48, § 5, 1993
Tex. Gen. Laws 97, 98-99 (amended 2003) (amending sections 51.002(b) and
51.002(d) and adding section 51.002(g)); Act of June 1, 2003, 78th Leg., R.S., ch.
554, § 2, 2003 Tex. Gen. Laws 1897, 1898-99 (amending sections 51.002(b), (d), and
(e)). In fact, the last such amendment came in June 2003, after our opinion on
original submission in this case had expressly adopted Bateman’s holding concerning
the county of sale under section 51.002(a), yet the Legislature still did not change
subsection (a). See Act of June 1, 2003, 78th Leg., R.S., ch. 554, § 2, 2003 Tex. Gen.
Laws 1897, 1898-99.
          Accordingly, we presume that the Legislature intended to adopt Bateman’s
interpretation. See, e.g., Marmon, 430 S.W.2d at 187. We thus hold that the trustee
properly conducted the sales of all tracts of land under the deed of trust in a county
in which the sales were allowed by section 51.002(a). Therefore, the trial court did
not err in implicitly concluding that the sales of tracts 2 and 3b were valid, in granting
Emmes’ summary judgment motion on this ground, and in denying appellants’
summary judgment challenges to the validity of these tracts’ sales.
          We overrule the Fogartys’ second issue and the Segals’ sixth issue.
 

V. Conclusion
          We affirm the judgment of the trial court.



 
Sam Nuchia
                                                                                  Justice


Panel consists of Justices Nuchia, Alcala, and Hanks.

Justice Cohen,


 who was a member of the panel at the time of original submission
of the cause and who retired from the Court before the issuance of the opinion, not
participating.

Justice Smith,


 a member of the panel at the time of original submission of the cause,
not participating on rehearing.

APPENDIX
 
1.       Act approved Mar. 21, 1889, 21st Leg., R.S., ch. 118 § 1, 1889 Tex. Gen.
Laws 143, 143, reprinted in 9 H.P.N. Gammel, The Laws of Texas 1822-1897, at 1171, 1171 (Austin, Gammel Book Co. 1898) (amended 1895)

“That all sales of real estate which may hereafter be made in this state under powers
conferred by any deed of trust or other contract lien shall be made in the county in
which such real estate is situated, notice shall be given as now required in judicial
sales, and such sales shall be made at public vendue, between the hours of 10 o’clock
a.m. and 4 o’clock p.m. of the first Tuesday in any month: Provided, That when such
real estate is situated in an unorganized county such sale shall be made in the county
to which such unorganized county is attached for judicial purposes, and where such
real estate is situated in two or more counties the sale may be made in any county
where any part of the real estate is situated, after notice as required in judicial sales
has been given in every county in which any part of such real estate is situated.” 
(Emphasis added.)
 
2.       1895 Tex. Rev. Civ. Stat. 469-70 (amended 1911) (appearing at former
Tex. Rev. Civ. Stat. art. 2369)

“All sales of real estate made in this state under powers conferred by any deed of
trust or other contract lien shall be made in the county in which such real estate is
situated. Notice shall be given as now required in judicial sales, and such sales shall
be made at public vendue, between the hours of ten o’clock a.m. and four o’clock
p.m. of the first Tuesday in any month; provided, that when such real estate is
situated in an unorganized county such sale shall be made in the county to which such
unorganized county is attached for judicial purposes, and where such real estate is
situated in two or more counties the sale may be made in any county where any part
of the real estate is situated, after notice as required in judicial sales has been given
in every county in which any part of such real estate is situated.” (Emphasis added.)
 
3.       1911 Tex. Rev. Civ. Stat. 773 (amended 1915) (appearing at former Tex.
Rev. Civ. Stat. art. 3759)

“All sales of real estate made in this state under powers conferred by any deed of
trust or other contract lien shall be made in the county in which such real estate is
situated. Notice shall be given as now required in judicial sales; and such sales shall
be made at public vendue, between the hours of ten o’clock a. m. and four o’clock p.
m. of the first Tuesday in any month; provided, that, when such real estate is situated
in an unorganized county, such sale shall be made in the county to which such
unorganized county is attached for judicial purposes, and, where such real estate is
situated in two or more counties, the sale may be made in any county where any part
of the real estate is situated, after notice as required in judicial sales has been given
in every county in which any part of such real estate is situated.” (Emphasis added.)
 
4.       Act of March 10, 1915, 34th Leg., R.S., ch. 43, § 1, 1915 Tex. Gen. Laws 84
(amended 1915) (appearing at former Tex. Rev. Civ. Stat. art. 3759)

“All sales of real estate made in this state under powers conferred by any deed of
trust or other contract lien shall be made in the county in which such real estate is
situated, unless such real estate be situated in more than one county, in which event
notices as herein provided shall be given in both or all of such counties, providing
and giving notice that such sale will be made of such real estate in that one of said
counties in which the greater portion of the real estate may be situated; if equal
quantities of said land to be sold lie in different counties, said notice shall designate
in which of said counties the sale is to be made.” (Emphasis added.)
 
5.       Act of May 28, 1915, 34th Leg., 1st C.S., ch. 15, § 2, 1915 Tex. Gen. Laws
32, 32-33 (amended 1925) (appearing at former Tex. Rev. Civ. Stat. art.
3759)

“All sales of real estate made in this state under powers conferred by any deed of
trust or other contract lien shall be made in the county in which such real estate is
situated, unless such real estate be situated in more than one county, in which event,
notices as herein provided shall be given in both or all of such counties, providing
and giving notice that such sale will be made of such real estate in that one of said
counties in which the greater portion of the real estate may be situated; if equal
quantities of said land to be sold lie in different counties, said notice shall designate
in which of said counties the sale is to be made.” (Emphasis added.)



 
6.       1925 Tex. Rev. Civ. Stat. 1022-23 (amended 1983) (appearing at former
Tex. Rev. Civ. Stat. art. 3810)

“All sales of real estate made under powers conferred by any deed of trust or other
contract lien shall be made in the county in which such real estate is situated. Where
such real estate is situated in more than one county then notices as herein provided
shall be given in both or all of such counties, and the real estate may be sold in either
county, and such notice shall designate the county where the real estate will be sold. 
Notice of such proposed sale shall be given by posting written notice thereof for three
consecutive weeks prior to the day of sale in three public places in said county or
counties, one of which shall be made at the courthouse door of the county in which
such sale is to be made, and if such real estate be in more than one county, one at the
courthouse door of each county in which said real estate may be situated . . . .” 
(Emphasis added.)
 
7.       Act of May 26, 1983, 68th Leg., R.S., ch. 576, 1983 Tex. Gen. Laws 3475,
3525 (amended 1984) (current version at Tex. Prop. Code Ann. §
51.002(a) (Vernon 1995))

“A sale of real property under a power of sale conferred by a deed of trust or other
contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the
first Tuesday of a month. The sale must take place in the county in which the land
is located, or if the property is located in more than one county, the sale may be made
in any county in which the property is located. . . . .” (Emphasis added.)
 
8.       Tex. Prop. Code Ann. § 51.002(a) (Vernon 1995) (last amended by Act of
May 19, 1987, 70th Leg., R.S., ch. 540, § 1, 1987 Tex. Gen. Laws 2174,
2174))

“A sale of real property under a power of sale conferred by a deed of trust or other
contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the
first Tuesday of a month. The sale must take place at the county courthouse in the
county in which the land is located, or if the property is located in more than one
county, the sale may be made at the courthouse in any county in which the property
is located. . . . .” (Emphasis added.)